SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.
Justice Donohue delivers the Opinion of the Court with respect to Part I, announces the judgment of the Court, and delivers an opinion with respect to Part II joined by Justices Baer and Todd
OPINION
JUSTICE DONOHUE[1]
In this discretionary appeal, we address two issues associated with workers' compensation claims by firefighters suffering from cancer. First, we must first determine the evidentiary requirements for a claimant to demonstrate that he or she has an "occupational disease," as that term is defined in Section 108(r) of the Workers' Compensation Act (the "Act"), 77 P.S. § 27.1(r).[2] Second, we must decide whether *200 epidemiological evidence may be used by an employer to rebut the evidentiary presumption that the claimant's cancer is compensable as set forth in Section 301(f) of the Act, 77 P.S. § 414.[3] With respect to the first issue, we conclude that pursuant to Section 108(r), the claimant has an initial burden to establish that his or her cancer is a type of cancer that is capable of being caused by exposure to a known IARC Group 1 carcinogen ("Group 1 carcinogen").[4] With respect to the second, we conclude that epidemiological evidence is not sufficient to rebut the evidentiary presumption under Section 301(f).
The City of Philadelphia hired claimant Scott Sladek ("Sladek") as a firefighter on May 9, 1994. Prior to his service as a firefighter, Sladek had not been treated for cancer and he passed a physical examination confirming he was cancer-free and in overall good health. Sladek earned a number of promotions over the course of his employment, including from firefighter to lieutenant in November 1997, to captain in 2004 and to battalion chief in November 2007. He was diagnosed with malignant melanoma and underwent a surgical procedure to remove the cancerous lesion from the back of his right thigh in January 2007.
On June 8, 2012, Sladek filed a claim petition for workers' compensation benefits alleging he developed melanoma from "[d]irect exposure to Group 1 carcinogens while working as a firefighter." Claim Pet., 6/8/12, at 1-2. The City filed an answer denying Sladek's claim that he was entitled to compensation. On February 19, 2013, a hearing was held before a Workers' Compensation Judge ("WCJ"), at which both sides presented evidence via affidavits and deposition testimony.
During his testimony before the WCJ, Sladek described, inter alia, his various positions and duties during his tenure as a firefighter and detailed the different phases of firefighting. He participated in fighting hundreds of exterior and interior fires during his career, and regularly was exposed over time to, inter alia, smoke, soot, ash, and diesel emissions, as well as to second-hand smoke in the firehouses. Following a fire, he would have soot in his nose, hair, clothes, and gear. Sladek also testified he believes he has fought fires in buildings containing asbestos, as he was *201 involved in ventilating buildings by cutting holes in walls, floors, and ceilings made of asbestos products.
Before the WCJ, Sladek offered a report authored by Virginia M. Weaver, M.D., M.P.H., an associate professor and faculty member at Welch Center for Prevention, Epidemiology and Clinical Research at Johns Hopkins University. Dr. Weaver has studied the occupational exposures of firefighters to known or probable carcinogens. Her report included the following list of Group 1 carcinogens commonly found in smoke: arsenic; asbestos; benzene benzo[a]pyrene; 1,3 butadiene; formaldehyde; soot. Weaver Report, 12/28/12, at 2. Group 1 carcinogens are carcinogens known to cause cancer in humans. She concluded, "it is my opinion, within a reasonable degree of medical certainty, that fire fighters are exposed to Group 1 carcinogens in the course of their work." Id. at 1.
Sladek also offered the expert opinion of Barry L. Singer, M.D. Dr. Singer is board certified in oncology, hematology, and internal medicine. N.T., 12/21/12, at 9. He is a practicing physician dedicating approximately seventy-five percent of his practice to medical oncology and twenty-five percent to hematology. Id. at 10-11. He does not have expertise in toxicology or epidemiology. Id. at 17. Dr. Singer was unable to cite a study causally linking any particular Group 1 carcinogens firefighters encounter to malignant melanoma. N.T., 1/14/13, at 199-206. Instead, he used a "differential diagnosis" method to assess diagnosis and causation.[5] N.T., 12/22/12, at 46, 55. He opined that the differential diagnosis method was not an appropriate method for assessing causes of cancer in the general population, but it is an appropriate assessment practice for determining causation in a specific individual. Id. at 81. He expressed his opinion that carcinogens could be absorbed through the skin when encountered, enter the blood stream, and develop into malignant melanoma on any part of a person's body. N.T., 1/14/13, at 203. Dr. Singer authored a report summarizing Sladek's exposure to carcinogens as a firefighter, his medical history, and referenced three reports he found relevant in forming his conclusion. Singer Report, 5/8/12, at 1-3. He concluded, "it is my opinion that Mr. Sladek's exposure to carcinogens while working for the City of Philadelphia Fire Department was a substantial contributing factor in the development of his skin cancermalignant melanoma.... I hold all my opinions to within reasonable medical certainty."[6] Id. at 3.
The City objected to Dr. Singer's expert opinion as incompetent as a matter of law based on the Frye[7] standard. See N.T., 1/14/13, at 257-258; N.T., 2/19/13, at 6-7. The City averred that Dr. Singer's methodology was not generally accepted in the *202 scientific community. N.T., 1/14/13, at 257-258; see id. at 285-87.
The City offered the testimony of Tee Guidotti, M.D., M.P.H., D.B.A.T. Dr. Guidotti is board certified in internal medicine, pulmonary medicine, and occupational medicine. N.T., 1/21/13, at 10. He holds an additional non-medical diploma in toxicology, which he noted is referred to as "the science of poisons" and explained it involves "the science of how chemicals affect the body and how the body responds to those chemicals." Id. He is trained in epidemiology, which he explained involves assessing patterns of diseases in populations. Id. at 12. Dr. Guidotti reviewed Dr. Singer's assessment on causation and concluded that Dr. Singer's "differential diagnosis" approach was neither an appropriate nor accepted methodology to determine if a causal relationship exists between an agent and a given disease. Indeed, he was unable to discern any actual "methodology" applied by Dr. Singer. Id. at 22.
Dr. Guidotti described the difference between general and specific causation. He explained that general causation "tells us that something can cause an outcome.... So general causation is essentially a statement of what might happen.... [I]t is the big picture." Id. at 22-23. Specific causation involves an analysis of circumstances and risk factors present in a particular case. Id. at 23. Dr. Guidotti testified that the typical profile for developing malignant melanoma is sunburn early in life. Id. at 67. He also testified that to his knowledge, melanoma is not caused by inhaling any substance and further that he had "seen no evidence that arsenic is associated with malignant melanoma in general, let alone the issue of firefighters."[8] Id. at 68, 158-59. He did not review Sladek's medical records, nor did he purport to give an opinion on specific causation in this case. Id. at 148-49.
The City offered Sladek's medical records for the period of time he was treated by Mitchell Anolik, M.D., his dermatologist. Dr. Anolik's notes indicate he advised Sladek to wear sunscreen and avoid the sunlight. The City also offered an IARC publication which explained that ultraviolet radiation is the major environmental risk factor for the development of melanoma.
On October 1, 2013, the WCJ granted Sladek's claim petition. The WCJ credited Sladek's uncontradicted testimony establishing that he was examined prior to his employment and had no signs of cancer and that he had more than four years of continuous service as a firefighter with direct exposure to Group 1 carcinogens. She found Sladek's testimony credible. WCJ Op., 10/1/13, at 6-7. With respect to the expert opinions, she made the following findings:
The testimony and opinions of Dr. Barry Singer have been carefully reviewed and considered in its entirety. Dr. Singer's methodology of causation - his use of a differential diagnostic assessment method is specifically found to be competent and an acceptable method of evaluating a causal relationship between Claimant's exposure in his job duties of firefighting and malignant melanoma. Dr. Singer's opinion that [Sladek's] malignant melanoma is a skin cancer caused by Group 1 carcinogens arsenic and soot is supported by the IARC monograms and literature describing the skin cancer risks of firefighters.... Dr. Singer's opinion that Claimant's uncontradicted exposure to Group 1 carcinogens were a significant contributing factor in his diagnosis with skin cancermalignant melanoma *203 is found credible and accepted as fact.
The testimony and opinions of Dr. Tee Guidotti regarding the method for offering a general causation opinion is not relevant or material to the relief/claim [sic ] is seeking. The general causation opinion in epidemiology is not relevant to a claim for an occupational disease pursuant to Section 108(r) of the Act. Dr. Guidotti limited his testimony and opinion to general causation, and declined to offer an opinion regarding Claimant. Dr. Guidotti does not offer an opinion to contest Claimant's exposure to Group 1 carcinogens or whether Claimant's cancer is related to Group 1 carcinogens. To the extent to which the opinion testimony of Dr. Tee Guidotti is not consistent with the opinion testimony of Dr. Singer, the opinion testimony of Dr. Tee Guidotti is rejected.
Id. at 7. Thus, the WCJ concluded that Sladek established his entitlement to benefits.
The City appealed to the Workers' Compensation Appeal Board ("Board"). The Board affirmed the WCJ's determination that Sladek proved his melanoma was an occupational disease under Section 108(r). WCAB Op., 3/13/15, at 11-12.[9] The Board concluded that under the Act, "[w]here [a c]laimant has shown that he was diagnosed with cancer and had been exposed to Group 1 carcinogens, he met his initial burden and benefitted from the presumption that his malignant melanoma is related to his firefighting." Id. at 12 (citation omitted). It explicitly rejected the City's position "that Sladek did not meet his initial burden because he did not show that in the course of his firefighting he was exposed to a particular carcinogen that is causally linked to his specific cancer, malignant melanoma. Id. at 12-13. The Board continued that once a claimant demonstrates that the cancer is an occupational disease, the burden shifts to the employer to rebut the presumption of causation. Id. at 14. Because Dr. Guidotti offered no evidence specific to Sladek's "individual malignant melanoma or what may or may not have caused it[,]" the City did not rebut the presumption. Id. at 14-15. The Board acknowledged that the City challenged the competency of Dr. Singer to offer an opinion, but found any "shortcomings" in the testimony to be immaterial. Id. at 16. Specifically, it reasoned, "the presumption to which Sladek is entitled regarding that causal relationship is sufficient to support an award of benefits, and where [the City] failed to rebut that presumption, the burden never shifted back to Sladek...." Id. at 15-16.
The City appealed the decision to the Commonwealth Court, which, sitting en banc, vacated and remanded the Board's decision. City of Phila. Fire Dept. v. W.C.A.B. (Sladek) , 144 A.3d 1011 (Pa. Cmwlth. 2016) (en banc). The intermediate appellate court concluded that Sladek failed to meet his initial burden to show "that his malignant melanoma is a type of cancercaused by the Group 1 carcinogens to which he was exposed in the workplace to establish an occupational disease." Id. at 1021-22 (emphasis in original). It further concluded that the Board erred when it rejected Dr. Guidotti's testimony because he did not offer an opinion specific to Sladek's case. The court explained, "Dr. Guidotti's testimony was relevant to both the initial question of whether Sladek's malignant melanoma was an occupational disease and to [the City's] rebuttal of the statutory presumption in Section 301(e) of *204 the Act."[10] Id. at 1022. The court remanded to the Board for consideration of whether the Act requires medical experts to meet the Frye standard and, if so, whether Dr. Singer satisfied that standard. Id. at 1023. It additionally ordered that if the testimony is found to be competent, the Board is to remand to the WCJ to determine whose causation opinion to credit. Id.
This Court granted Sladek's petition for allowance of appeal to consider the following two issues:
(1) Whether the Commonwealth Court, in a case of first impression, committed an error of law by misinterpreting Section 108(r) to require a firefighter diagnosed with cancer caused by an IARC Group 1 carcinogen to establish exposure to a specific carcinogen that causes his/her cancer in order to gain the rebuttable presumption provided by the law?
(2) Whether the Commonwealth Court committed an error of law by concluding that a legislatively-created presumption of compensability may be competently rebutted by a general causation opinion, based entirely upon epidemiology, without any opinion specific to the firefighter/claimant making the claim?
City of Phila. Fire Dept. v. W.C.A.B. (Sladek) , 641 Pa. 262, 167 A.3d 707 (Pa. 2017).
In his brief filed with this Court, Sladek argues that the Commonwealth Court's decision unreasonably increases a claimant's burden under Section 108(r) by requiring a firefighter-claimant to link a specific carcinogen to the cancer for which compensation is sought. Sladek's Brief at 17-18. He continues the General Assembly used clear, unambiguous language when it enacted Section 108(r), and he "is not required to prove that his diagnosis with cancer was caused by specific carcinogen exposures at work to pursue benefits" under Section 108(r). Id. at 19-20. He continues that had the General Assembly intended to require a heightened or more specific burden of causation on a claimant, it would have included such language in the relevant provisions. Id. at 20-22. Because Sladek provided uncontradicted evidence of his exposure to Group 1 carcinogens, and the WCJ credited Dr. Singer's testimony on causation, he contends that he met the requirements under Section 108(r) of the Act. Id. at 22-23. Finally, Sladek posits that the Commonwealth Court's interpretation would lead to an absurd result because it heightens the burden placed on a firefighter seeking benefits for a cancer diagnosis.
With respect to rebuttal of the evidentiary presumption, Sladek argues the plain language of Sections 301(e) and 301(f) of the Act make clear that a presumption of causation may not be rebutted by general opinions that are not specific to the claimant. See id. at 25-28. Relying on Jeannette District Memorial Hospital v. W.C.A.B. (Mesich) , 668 A.2d 249 (Pa. Cmwlth. 1995) (where, pursuant to Section 108(m) the claimant established an occupational disease and the employer was unable to rebut her presumption of causation with an alternative cause, she was entitled to benefits), he posits that it is "well-established *205 that [the employer] cannot rebut the presumption of compensability without providing an opinion as to an alternate cause of claimant's disease." Sladek's Brief at 26.
Here, Sladek notes there is a "catch-all" provision at Section 108(n) that designates other conditions, not otherwise listed in Section 108, as occupational diseases as follows.
§ 27.1 Occupational diseases; definitions
...
The term "occupational disease," as used in this act, shall mean only the following diseases.
...
(n) All other diseases (1) to which the claimant is exposed by reason of his employment, and (2) which are causally related to the industry of occupation, and (3) the incidence of which is substantially greater in that industry or occupation than in the general population....
77 P.S. § 27.1(n). He argues that permitting an employer to defend against an occupational disease claim with general causation evidence not specific to the claimant essentially converts every occupational disease to a Section 108(n) claim. Sladek's Brief at 28-29. His argument continues that allowing general causation or epidemiology evidence to rebut a presumption of causation would unreasonably increase the burden on a claimant seeking benefits for an occupational disease. Under this rule, "[a] worker diagnosed with a listed occupational disease would be required to offer a general causation opinion based upon epidemiology regarding the incidence of the disease within his occupation, after offering specific medical evidence regarding his diagnosis and exposures." Id. at 29. Sladek highlights that in a workers' compensation claim, the claimant's burden is to establish an entitlement to benefits by a preponderance of the evidence; in his view, allowing a general causation testimony based on epidemiology, unreasonably increases the burden on a firefighter. See id. at 30-31.
The Pennsylvania Professional Fire Fighters Association (PPFFA) filed an amicus curiae brief in support of Sladek. The PPFFA argues that the passage of Act 46 amended the Act in an effort to lessen the burden on firefighters seeking a workers' compensation claim for cancer, and the Commonwealth Court's opinion "flies in the face of the General Assembly's intentions." PPFFA Brief at 4. It draws a comparison between Section 108(r) and Section 108(o), regarding heart and lung disease, which provides:
§ 27.1 Occupational diseases; definitions
...
The term "occupational disease," as used in this act, shall mean only the following diseases.
...
(o) Disease of the heart and lungs, resulting in either temporary or permanent total or partial disability or death, after four years or more of service in fire fighting for the benefit or safety of the public, caused by extreme overexertion in terms of stress or danger or by exposure to heat, smoke, fumes or gasses, arising directly out of the employment of any such firemen.
77 P.S. § 27.1(o). The PPFFA argues that the cases interpreting Section 108(o) reveal that there is no burden to prove general causation, notwithstanding the "caused by language." PPFFA Brief at 11; see, e.g. , Dillon v. W.C.A.B. (City of Phila.) , 853 A.2d 413, 418 (Pa. Commw. 2004) (explaining that the claimant "was entitled to the evidentiary advantage of the presumption *206 in Section 301(e)" because he established exposure to harmful substances throughout his twenty-one year career and contracted heart disease ); City of Wilkes-Barre v. W.C.A.B. (Zuczek) , 541 Pa. 435, 664 A.2d 90, 91-92 (1995) (firefighter who showed he had "been exposed to fumes and other hazards as a fireman" entitled to the presumption that his heart disease arose from exposure). Thus, under Section 108(o), a claimant need only show development of heart or lung disease and exposure to the hazards listed in Section 108(o). PPFFA Brief at 11. By using the same language, the General Assembly intended the same interpretation, i.e., that a claimant seeking compensation under Section 108(r) need only establish development of cancer and exposure to the Group 1 carcinogens before the statutory presumption applies. Id. Finally, it contends that the Commonwealth Court erred in concluding Dr. Guidotti's testimony was sufficient to rebut the causation presumption because Dr. Guidotti did not offer evidence on Sladek's case specifically. Id. at 12.
Conversely, the City grounds its argument in the General Assembly's inclusion of the words "caused by" in Section 108(r). It highlights that certain occupational diseases do not include causal language, and thus the inclusion of causal language in Section 108(r) is evidence of the General Assembly's intention to require a claimant to prove that his or her cancer is caused by the carcinogens to which he or she was exposed. City's Brief at 20-23; see, e.g. , 77 P.S. § 27.1(k) (defining as an occupational disease, "[s]ilicosis in any occupation with direct contact with, handling of, or exposure to the dust of silicon diocide"). The City posits that the language chosen by the Legislature in Section 108(r) creates a three-pronged initial burden on firefighter-claimants seeking benefits: 1) the firefighter must have cancer ; 2) the firefighter must meet the criteria under Section 301(f); 3) the firefighter must prove that the cancer was "caused by" direct exposure to a Group 1 carcinogen. City's Brief at 23-25. According to the City, these three requirements serve as a "threshold issue" that the claimant must satisfy before the claim may continue. Id. at 25. The City contends the plain language of the statute supports its reading. It contends Section 108(r) requires a claimant to prove "plausibility," or general causation, i.e., that the cancer suffered by the firefighter is a type of cancer caused by Group 1 carcinogens encountered while firefighting.[11] Id. at 27-30.
With respect to Sladek's position that Dr. Guidotti's general causation testimony was insufficient to rebut a presumption of causation, the City contends this Court should not address the issue because Sladek failed to carry his initial burden, i.e., that he has an occupational disease under Section 108(r).Id. at 32. Alternatively, the City contends that Dr. Guidotti's testimony was indeed sufficient to rebut the presumption because he specifically disputed Dr. Singer's opinion that exposure to the occupational carcinogens has a proven causal nexus to developing malignant melanoma, and he noted that the only known exposure-related cause of melanoma is ultraviolet radiation exposure. See id. at 32-38. Finally, the City argues its and the Commonwealth Court's interpretation of the Act does not lead to an absurd and unreasonable result.
*207 Delaware Valley Workers' Compensation Trust and the Pennyprime Workers' Compensation Trust filed an amicus curiae brief in support of the City's position. It contends that there is a prima facie burden of general causation imposed on a claimant before the statutory presumption attaches. Further, the amicus brief argues that as a policy matter, adopting Sladek's position would make firefighter cancer claims uninsurable because trusts "could not underwrite the risks under Act 46 at an affordable cost to their participating employers." Amicus Brief at 16.
Analysis
This appeal requires us to interpret statutory provisions and thus it presents a pure question of law over which our standard of review is de novo and our scope of review is plenary. See, e.g., Phoenixville Hosp. v. W.C.A.B. (Shoap), 623 Pa. 25, 81 A.3d 830, 838 (2013) ; Hoffman v. Troncelliti , 576 Pa. 504, 839 A.2d 1013, 1015-16 (2003). As in all cases of statutory interpretation, our goal is to ascertain the intent of the General Assembly in adopting the statute. 1 Pa.C.S. § 1921(a). In doing so, we must, if possible, give effect to all the provisions of a statute. 1 Pa.C.S. §§ 1921, 1922. "In construing a statute, the courts must attempt to give meaning to every word in a statute, as we cannot assume that the legislature intended any words to be mere surplusage. Reginelli v. Boggs , --- Pa. ----, 181 A.3d 293, 304 (2018). Additionally, statutes that apply to the same class of persons should be read, where possible, in pari materia with each other. 1 Pa.C.S. § 1932 ; Holland v. Marcy , 584 Pa. 195, 883 A.2d 449, 455-56 (2005)
The Act was amended in 2011[12] to add two provisions, Sections 108(r) and 301(f), dealing specifically with firefighters claiming benefits for cancer alleged to be caused as a result of performing the duties of firefighters. Generally, reading the sections together, the statutory framework for litigation of claims for workers' compensation benefits by firefighters afflicted with cancer proceeds in discrete stages. Initially, the claimant must establish that he or she has an "occupational disease," as that term is defined in Section 108(r).[13] 77 P.S. § 27.1(r). Next, to establish an evidentiary presumption of entitlement to compensation in accordance with section 301(f), the claimant must establish that he or she
(1) served four or more years in continuous firefighting duties;
(2) had direct exposure to a Group 1 carcinogen; and
(3) passed a physical examination prior to asserting a claim or prior to engaging in firefighting duties (and the examination failed to reveal any evidence of cancer ).
77 P.S. § 414. Finally, if the claimant succeeds in demonstrating an occupational disease and an entitlement to the evidentiary presumption of compensability, then the burden of proof shifts to the employer, who must offer "substantial competent evidence that shows that the firefighter's cancer was not caused by the occupation of firefighting." Id.
*208 I.
Section 108(r) - Occupational Disease
The express language of Section 108(r), namely that the claimant has a "cancer... which is caused by exposure to a known (Group 1) carcinogen" clearly imposes an initial burden of causation on the claimant. Importantly, however, the provision only requires the claimant to establish a general causative link between the claimant's type of cancer and a Group 1 carcinogen. In other words, the claimant must produce evidence that it is possible that the carcinogen in question caused the type of cancer with which the claimant is afflicted.[14] It does not require the claimant to prove that the identified Group 1 carcinogen actually caused claimant's cancer. Section 108(r) embodies a legislative acknowledgement that firefighting is a dangerous occupation that routinely exposes firefighters to Group 1 carcinogens that are known to cause various types of cancers. The "general causation" requirement under Section 108(r) constitutes a recognition that different types of cancers have different etiologies and it weeds out claims for compensation for cancers with no known link to Group 1 carcinogens. The burden imposed by Section 108(r) is not a heavy burden.
In this regard, epidemiological evidence is clearly relevant and useful in demonstrating general causation. Epidemiology deals with, inter alia, the identification of potentially causative associations in various populations between possible causative agents and the resulting incidence of particular diseases and seeks to generalize those results. In so doing, epidemiology may provide "useful information as to whether there is a relationship between an agent and a disease and, when properly interpreted, can provide insight into whether the agent can cause the disease." See, e.g. , Blum by Blum v. Merrell Dow Pharm., Inc. , 705 A.2d 1314, 1323-24 (Pa. Super. 1997), aff'd sub nom. Blum ex rel. Blum v. Merrell Dow Pharm., Inc. , 564 Pa. 3, 764 A.2d 1 (2000), and abrogated on other grounds by Trach v. Fellin , 817 A.2d 1102 (Pa. Super. 2003). Given its focus on identifying generalized causal relationships between potential causative agents and the resulting incidence of disease, *209 epidemiology's focus on statistical analysis may be uniquely suited to illuminate whether there is a general causal relationship between types of cancer and Group 1 carcinogens.[15]
II.
Rebutting the Presumption of Compensability Under Section 301(f)
While epidemiological evidence supports the burden of establishing general causation, where the claimant has established an entitlement to the evidentiary presumption of compensability under Section 301(f), such epidemiological evidence is not sufficient to rebut the presumption. As the language of Section 301(f) plainly provides, the evidence required to rebut this presumption must show that "the firefighter's cancer was not caused by the occupation of firefighting." 77 P.S. § 414. The phrase "the firefighter's cancer" refers to the claimant's cancer, and thus requires the employer to sustain its burden of proof by demonstrating (1) the specific causative agent of claimant's cancer, and (2) exposure to that causative agent did not occur as a result of his or her employment as a firefighter. In other words, the language of Section 301(f) requires the employer to produce a medical opinion regarding the specific, non-firefighting related cause of claimant's cancer.
The nature of the evidence necessary to establish an "occupational disease" under Section 108(r) of the Act differs markedly from the nature of the evidence that an employer must present to rebut the evidentiary presumption of employment-related causation. Unlike the proof required under Section 108(r), the employer may not rebut the evidentiary presumption with generalized epidemiological evidence that claimant has a type of cancer that may (or may not) possibly be caused by a Group 1 carcinogen.[16] As indicated, epidemiological studies merely identify statistical associations between disease *210 and potentially causative agents in broad populations, and thus do not provide any evidence demonstrating the specific cause of a particular claimant's cancer. To reach the stage of the proceedings at which the employer attempts to rebut the presumption of employment-related causation, the claimant has already carried his or her Section 108(r) burden of proof that his or her cancer is of a type that may be caused by a Group 1 carcinogen. The employer may not rebut the evidentiary presumption merely by revisiting this determination and challenging its accuracy. At the rebuttal stage, the issue relates not to "types of cancer" relative to potential carcinogens, but rather requires proof of that the cancer from which the claimant suffers was not caused by his occupation as a firefighter.
Given the facts of this case and its procedural posture, the epidemiological opinion of Dr. Guidotti may be outcome determinative but not because it rebuts the evidentiary presumption arising under Section 301(f). Instead, if on remand, the Board determines that Dr. Singer's expert opinion does not satisfy the Frye standard, Sladek cannot carry his evidentiary burden of proof to establish an "occupational disease" under Section 108(r). The same result will obtain even if the Board determines that Dr. Singer's expert opinion satisfies the Frye standard, but also concludes that Dr. Guidotti's opinion is more credible on the question of general causation. In this scenario, the epidemiological evidence offered by the City through Dr. Guidotti would carry the day without the burden of proof with respect to the evidentiary presumption ever shifting to the City to prove specific causation. If the evidentiary burden does shift to the City, however, Dr. Guidotti's opinion would be insufficient to rebut the evidentiary presumption.
For the reasons set forth hereinabove, we reverse the decision of the Commonwealth Court and remand for proceedings consistent with this Opinion.
Justices Baer and Todd join the opinion.
Justice Wecht joins Part I of the opinion and files a concurring and dissenting opinion.
Chief Justice Saylor files a concurring and dissenting opinion.
Justice Mundy files a concurring and dissenting opinion in which Justice Dougherty joins.
I agree with the learned Majority's interpretation of Subsection 108(r) of the Workers' Compensation Act. As the Majority explains, claimants relying upon the presumption set forth in Subsection 108(r) need demonstrate only that they suffer from a type of cancer that is capable of being caused by a Group 1 carcinogen. Majority Opinion at 207; see 77 P.S. § 27.1(r). Because I agree that the Commonwealth Court's decision departed from the plain language of Subsection 108(r) when it added a workplace-exposure requirement that the General Assembly chose not to impose upon claimants,[1] I join Part I of the Majority opinion in full.
Turning to the second issue before us, which concerns the City of Philadelphia's burden to rebut the presumption that Sladek's cancer was caused by his occupation, I would hold that an expert's general causation *211 testimony regarding epidemiological studies if credited by a WCJ, may prove the required lack of causation. The Majority is, of course, correct that the City was obliged to produce substantial competent evidence showing that Sladek's particular case of malignant melanoma was not caused by his firefighting. But, logically, evidence showing that firefighting never causes malignant melanoma necessarily would establish that firefighting did not cause a particular occurrence of malignant melanoma.
The Majority suggests that allowing employers to rebut the presumption with general causation evidence would permit them to relitigate exactly what the claimant already has proven in order to invoke the presumption.[2] Not so. As the Majority correctly explains, a claimant can invoke the presumption set forth in Subsection 108(r) simply by demonstrating that he or she suffers from a type of cancer that is capable of being caused by a Group 1 carcinogen. Majority Opinion at 207. Surely an employer can introduce epidemiological evidence showing that firefighting-related exposures never cause the firefighter's specific type of cancer without also disputing that the firefighter's type of cancer is capable of being caused by one or more Group 1 carcinogens.
To illustrate, assume that a firefighter suffers from a type of cancer ("cancer X"), which everyone agrees can be caused only by the consumption of processed meat. The firefighter would have no problem invoking Subsection 108(r), since the International Agency for Research on Cancer ("IARC") has classified processed meat as a Group 1 carcinogen.[3] But the firefighter's employer easily could rebut the presumption-and prove that "the firefighter's cancer was not caused by the occupation of firefighting"-by introducing epidemiological evidence showing that cancer X is associated with processed meat consumption only, never with firefighting.
This is no silly hypothetical. It is essentially what happened in this case. Sladek invoked Subsection 108(r), hoping that it would allow the WCJ to presume that Sladek's firefighting caused his malignant melanoma. In response, the City's expert, Dr. Tee Guidotti, testified that all skin cancers have an etiologic connection with ultraviolet radiation, and that malignant melanoma is not caused by the inhalation of smoke (which contains arsenic and soot) or by the inhalation of any substance at all. The City also introduced a World Health Organization publication, which explained that "[i]ntermittent exposure to UVR [ (ultraviolet radiation) ] in white people, especially during childhood, has been postulated to be the main risk factor for the development of melanoma, although exposure in adulthood also plays a part." City of Philadelphia Fire Dept. v. W.C.A.B. (Sladek) , 144 A.3d 1011, 1018 (Pa. Cmwlth. 2016). I see no reason why evidence showing that firefighting never causes malignant melanoma, if credited by the WCJ, would not also constitute evidence that Sladek's particular occurrence *212 of malignant melanoma was not caused by firefighting.
In sum, I would hold that: (1) occupational disease claimants can satisfy Subsection 108(r) by showing that they suffer from a kind of cancer that is caused by a Group 1 carcinogen; and (2) an expert-epidemiologist's general causation testimony may constitute substantial competent evidence that a firefighter's cancer was not caused by the occupation of firefighting.
As concerns the first issue on which allocatur was granted, Claimant's argument is premised substantially on the notion that the Commonwealth Court imposed an unduly elevated burden on firefighters seeking to pursue workers' compensation benefits on account of cancer as an occupational disease. In this regard, Claimant pervasively asserts that the intermediate court determined that the cancer-related definition of "occupational disease," delineated in Section 108(r) of the Workers' Compensation Act, requires a firefighter-claimant to "prove that his cancer is caused by specific carcinogens 'to which he was exposed in the workplace[.]' " Brief for Appellant at 24 (quoting City of Phila. Fire Dep't v. WCAB (Sladek) , 144 A.3d 1011, 1022 (Pa. Cmwlth. 2016) ) (emphasis added); see also id. at 13-14, 16, 19-22.
In point of fact, however, the Commonwealth Court's material holding was to the effect that Claimant was required to "prove that his malignant melanoma is a type of cancer caused by the Group 1 carcinogens to which he was exposed in the workplace to establish an occupational disease." Sladek , 144 A.3d at 1021-22 (emphasis adjusted). Contrary to Claimant's position, this formulation contains no requirement of specific causation.[1]
Significantly, moreover, for purposes of Section 108(r), Claimant accepts the burden to prove both of the pivotal requirements embodied in the Commonwealth Court's actual holding, as stated above. Specifically, he indicates that "to pursue benefits pursuant to Section 108(r) ...[Claimant] must show [ (1) ] that his cancer is a type caused by exposure to IARC Group 1 carcinogens and [ (2) ] that he had direct exposure to those carcinogens at work." Brief for Appellant at 20. Therefore -- and once the mistaken premise (i.e. , that the Commonwealth Court imposed some greater causation requirement) is removed -- I fail to discern how Claimant's argument, as concerns the first issue, differs from the City's main substantive position. See, e.g. , Brief for Appellee at 25 ("If a claimant can prove that he or she was directly exposed to an IARC Group 1 carcinogen while working as a firefighter and has a type of cancer that is causally related to that IARC Group 1 carcinogen, then a claimant has established that he or she suffers from an occupational disease.").[2]
*213 The majority adopts the first prong of this standard but appears to simply disregard the second. For my own part, however, in light of substantive consensus among the litigants, I would affirm the Commonwealth Court's holding -- concerning both prongs of the two-part standard -- on a case-specific basis, without foreclosing the possibility that Section 108(r) might be construed differently in future cases in which other arguments might be presented.[3] Alternatively, the first issue could be dismissed as having been improvidently granted.
In terms of the second issue presented, I respectfully differ with the majority's position that Section 301(f) limits an employer's rebuttal evidence to production of "a medical opinion regarding the specific, non-firefighting related cause of claimant's cancer." Majority Opinion, at 209. In point of fact, nothing on the face of Section 301(f) would foreclose an employer from proving that "the firefighter' cancer was not caused by the occupation of firefighting," 77 P.S. § 414, by demonstrating that substances to which the claimant was exposed while serving as a firefighter do not cause the relevant type of cancer in the general population.
In this regard, to cause cancer in an individual, a substance must be capable of causing cancer in the general population (of which any individual is a member). See generally Knight v. Kirby Inland Marine Inc., 482 F.3d 347, 351 (5th Cir. 2007) ; accord 63 AM. JUR. 2 D PRODUCTS LIABILITY § 71.[4] As a logical matter, therefore, a party who proves that a substance is not capable of causing cancer in the general population advances highly persuasive (if not dispositive) evidence that the substance did not cause a particular individual's cancer. Accord City of Littleton v. Indus. Claim Appeals Office , 370 P.3d 157, 169 n. 9 (Colo. 2016) ("Logically, the absence of general causation forecloses the possibility of specific causation." (citation omitted) ).
Thus, I fail to see how an employer offering admissible, competent evidence that substances to which a firefighter-claimant *214 was exposed do not cause the type of cancer suffered by such claimant in the general population has not presented "substantial competent evidence that shows that the firefighter's cancer was not caused by the occupation of firefighting." 77 P.S. § 414. Indeed, the Colorado Supreme Court recently had little difficulty reaching the same conclusion in the context of a similar statute entitling an employer to rebut a presumption of work relatedness benefitting firefighters. See City of Littleton , 370 P.3d at 169 (explaining that "nothing in [the statute] prohibits the employer from seeking ... to establish the lack of general causation by showing ... that the firefighter's work exposures are not capable of causing the firefighter's condition or health impairment").
The majority appears to suggest that its holding is ameliorated by the imposition, under Section 108(r), of a requirement for the claimant to prove general causation. See Majority Opinion, at 209-10. Such requirement, however, as articulated by the majority, is causation in the abstract. In this regard, the majority requires only that a claimant demonstrate a link between the type of cancer from which he suffers and any Group 1 carcinogen, apparently regardless of whether it is one to which the firefighter might have been exposed at work. See Majority Opinion, at 200.[5] For my part, I fail to see how such a limited requirement of proof can be relied upon to restrict an employer's ability to present evidence that the substances to which a firefighter-claimant was exposed at work simply do not cause the relevant type of cancer, particularly when such defense resides squarely within the statutory authorization for rebuttal provided by the General Assembly. Accord City of Littleton , 370 P.3d at 169.[6]
In all events, on the arguments presently before the Court, I would not dilute the Commonwealth Court's holding requiring some showing, by a firefighter-claimant, that the type of cancer could have been caused by Group 1 carcinogens to which the claimant was exposed at work , while at the same time foreclosing employers from demonstrating that this type of cancer is incapable of having been caused by relevant workplace exposure.
For all of the above reasons, I respectfully dissent as to the substantive treatment of the two discrete issues presented in this appeal. I agree with the majority, however, that the case should be remanded relative to the treatment of Claimant's expert evidence.
It is incongruent with the intent of the Workers' Compensation Act and the language of its relevant provisions to place a *215 burden of causation on a firefighter when the Act itself provides for the presumption of causation. The statutory scheme contemplated by the Legislature did not intend to place any initial burden on a claimant to show that his or her cancer is capable of being caused by exposure to IARC Group 1 carcinogens. Thus, I respectively dissent as to the Majority's resolution of the first issue.
Sladek argues the Commonwealth Court decision requiring him " 'to prove that his malignant melanoma is a type of cancer caused by Group I carcinogens to which he was exposed in the workplace to establish an occupational disease' " before the presumptions afforded under the Act may be invoked places "an additional and unreasonable burden of proof for a firefighter diagnosed with cancer." Sladek's Brief at 18 (citing City of Phila. Fire Dept. v. W.C.A.B. , 144 A.3d 1011, 1021-22 (Pa. Cmwlth. 2016) (en banc) ). At the outset, it bears noting that this Court has stated that the Workers' Compensation Act is remedial in nature, and the aim of its enactment was to benefit the worker. Phoenixville Hosp. v. W.C.A.B. (Shoap) , 623 Pa. 25, 81 A.3d 830, 838 (2013). Accordingly, we must liberally construe the Act in accordance with its humanitarian aims, recognizing that borderline interpretations should be resolved in favor of the worker. Id.
Reading the relevant provisions of the Act as a whole, in order to be entitled to compensation benefits for cancer, a firefighter claimant must show: 1) the presence of an occupational disease under Section 108(r); 2) four or more years of service in continuous firefighting duties; 3) direct exposure to a Group 1 carcinogen; and 4) that he or she underwent a physical examination that did not reveal the existence of cancer prior to asserting the claim or engaging in firefighting (provided the City does not successfully rebut the presumption). 77 P.S. § 27.1 ; 77 P.S. § 414 ; 77 P.S. § 413. However, the question before this Court concerns what if any evidentiary burden imposed on a claimant in order to first meet the definition of an occupational disease under Section 108(r).
The Majority concludes that a firefighter-claimant "must produce evidence that it is possible that the carcinogen in question caused the type of cancer with which the claimant is afflicted." Majority Op. at 208 (emphasis omitted). Notwithstanding the Majority's characterization that this does not constitute "a heavy burden" upon a claimant, it is a burden nonetheless. The Legislature did not intend any such burden to be placed on a claimant before he or she is entitled to the evidentiary presumption at Section 301(e). See id. at 208. By its enactment, Section 301(e) created "a procedural or evidentiary advantage to a claimant who has established that he has contracted an occupational disease and the disease was a hazard in his occupation or industry." City of Wilkes-Barre v. W.C.A.B. (Zuczek) , 541 Pa. 435, 664 A.2d 90, 92 (1995). The evidentiary presumption afforded by Section 301(e) would be negated by requiring a causal showing by a claimant at the outset of the litigation. By listing cancer as an occupational disease and creating a rebuttable presumption of causation, the Legislature has acknowledged that firefighters are exposed to a number of IARC Group 1 carcinogens in the course of the dangerous work they perform. Indeed, in affirming the award of compensation benefits to Sladek in the instant case, the Workers' Compensation Appeal Board turned to the legislative history underlying Section 108(r) and observed the following:
We also note that in remarks made in the Pennsylvania House of Representatives regarding House Bill 797, which *216 was enacted as Act 46 of 2011, reference was also made to prior House Bill 1231, which was described as similar legislation that had been passed in the previous year's session by the House and the Senate but was vetoed on November 27, 2010. It was specifically noted that House Bill 797 represented a compromise that improved upon House Bill 1231. (Pa. Legis. Journal - House, June 21, 2011, at 1337-1339). The text of House Bill 1231 reveals that a prior version of Section 108(r) provided for cancer caused by exposure to "a known carcinogen which is recognized by the International Agency for Research on Cancer which is reasonably linked to the cancer." However, the phrase "which is reasonably linked to the cancer" was subsequently removed and did not appear in the final text of that bill as passed by the House and Senate. See H.B. 1231, 193rd Leg., 2009-2010 Reg. Sess., Printer Number 4393. Had the General Assembly wished to require claimants to prove a specific causal link between a particular carcinogen and a particular cancer as part of their initial burden, it could have retained language to that effect in House Bill 1231 or added such language back to House Bill 797, which ultimately became Act 46 of 2011, but that did not occur.
Board Op. at 13-14, n. 11.
I agree with the Board's review of the statutory language and legislative history and its conclusion based thereon that the omission of the "reasonably linked to the cancer" language from Section 108(r) was a purposeful choice by the General Assembly not to require a causal link as an initial burden on a claimant. In sum, review of Sections 108(f), 301(f), and 301(e) demonstrate that once a firefighter establishes contraction of a cancer and exposure to Group 1 carcinogens and has also established four or more years in continuous firefighting duties and a history of being cancer-free prior to service, he or she is entitled to the rebuttable presumption that the cancer was caused by workplace activities.[1] See 77 P.S. §§ 27.1(r), 414, 413. This construction is consistent with both the text of Section 108(r) and the remedial nature of the Workers' Compensation Act. See 1 Pa.C.S. § 1921(b) ; Phoenixville Hosp. , 81 A.3d at 838. The presumption, however, does not afford the firefighter an entitlement to benefits, but an evidentiary advantage which relieves the firefighter of proving causation. The legislative history supports the conclusion that the General Assembly intended to ease the burden on firefighter-claimants, not enhance it. Accordingly, I dissent with respect to the Majority's resolution of the first issue and would conclude that Claimant has met the definition of occupational disease under Section 108(r) and was thus entitled to the presumption that his occupational disease, malignant melanoma, arose in the course of his employment per Section 301(e).
Conversely, I concur with the Majority's conclusion that testimony on the general causation of cancer, based on epidemiological evidence, is not relevant or sufficient evidence to overcome the presumption of causation afforded under Section 301(e). See Majority Op. at 208-10. Section 301(e) evinces the Legislature's intent to afford firefighter-claimants an evidentiary advantage. See Marcks v. W.C.A.B., 119 Pa.Cmwlth. 214, 547 A.2d 460, 463 (1988) ("[i]t is the legislature's express intent that firemen *217 seeking recovery for occupational diseases resulting from the hazards of their trade be given an evidentiary advantage."). Section 301(f), references a presumption, and states, "[t]he presumption of this subsection may be rebutted by substantial competent evidence that shows that the firefighter's cancer was not caused by the occupation of firefighting." 77 P.S. § 414.
"[T]he firefighter's cancer" as used in Section 301(f) plainly refers to the individual's case of cancer. See id. Thus, at this stage of litigation, it is the employer's burden to show that the particular firefighter-claimant did not develop his or her cancer as a result of exposure to carcinogens in the course of the occupation of firefighting. See id. Specifically, the employer may only rebut the presumption by "substantial competent evidence that shows that the firefighter's cancer was not caused by the occupation of firefighting." Id. Section 301(f) is silent as to what constitutes "substantial competent evidence." However, the Commonwealth Court has stated, "[s]ubstantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." Waldameer Park, Inc. v. W.C.A.B. (Morrison) , 819 A.2d 164, 168 (Pa. Cmwlth. 2003) ; Rising Sun Entertainment, Inc. v. Com ., 829 A.2d 1214, 1219 (Pa. Cmwlth. 2003). By the plain text of Section 301(f), City was required to proffer substantial competent evidence specific to Sladek's cancer that demonstrates the non-employment related cause of his or hercancer. See Jeannette District Memorial Hospital , 668 A.2d at 252 ("Employer's evidence was insufficient to rebut the presumption that [the c]laimant's disease was work-related" because the medical testimony presented "could not establish within a reasonable degree of medical certainty what had caused [the c]laimant's" occupational disease). It failed to do so.
As Dr. Guidotti explained in the instant case, epidemiology evidence assesses patterns of disease in populations, and epidemiology is "good at" assessing general causation. See N.T., 1/21/13, at 12, 23. He further explained that general causation "basically tells us something can cause an outcome." Id. at 22. In other words, "general causation is essentially a statement of what might happen." Id. at 23. It differs from specific causation evidence in that specific causation involves assessing "the facts of a particular case." Id. Although epidemiological evidence may provide insight as to whether a particular agent may cause a particular ailment in certain populations, it is not substantial competent evidence that a particular causative agent indeed caused the ailment because its focus is on general inferences in populations, and not a particularized assessment of any one case. See Blum ex rel. Blum v. Merrell Dow Pharmaceuticals, Inc. 564 Pa. 3, 764 A.2d 1, 14 n. 9 (Castille, J., dissenting) (explaining, "[e]pidemiological studies consider whether causation may be inferred by comparing the incidence of a disease in a group of humans who have been exposed to the substance in question with the incidence in a group who have not been exposed"); see also N.T., 1/21/13, at 23 (Dr. Guidotti noting that specific causation departs from general causation "to the extent that the individual may be different from the group that was studied before"). Such generalized and non-specific evidence, which effectively nullifies the presumption at Section 301(e), cannot be deemed adequate or competent to support a conclusion that an employer has rebutted a statutorily endowed presumption of causation with substantial and competent evidence. See Waldameer Park, Inc. , 819 A.2d at 168 ; Marcks , 547 A.2d at 464.
Based on the foregoing, I would hold: 1) Sladek met his burden of establishing an *218 occupational disease under 108(r), and was thus entitled to the presumption of Section 301(e) that his malignant melanoma was caused by his employment as a firefighter; and 2) the general causation evidence in the nature of expert testimony on epidemiology offered by the City was insufficient to rebut the presumption of benefits to Sladek. Accordingly, I dissent from Part 1 of the Majority, and concur in the result of Part 2.
Justice Dougherty joins this concurring and dissenting opinion.

This case was reassigned to this author.

Section 108(r) provides:
§ 27.1. Occupational diseases; definitions
The term "occupational disease," as used in this act, shall mean only the following diseases.
* * *
(r) Cancer suffered by a firefighter which is caused by exposure to a known carcinogen which is recognized as a Group 1 carcinogen by the International Agency for Research on Cancer.
77 P.S. § 27.1(r).

Section 301(f) provides:
§ 414. Compensation for cancer suffered by a firefighter
Compensation pursuant to cancer suffered by a firefighter shall only be to those firefighters who have served four or more years in continuous firefighting duties, who can establish direct exposure to a carcinogen referred to in Section 108(r) relating to cancer by a firefighter and have successfully passed a physical examination prior to asserting a claim under this subsection or prior to engaging in firefighting duties and the examination failed to reveal any evidence of the condition of cancer. The presumption of this subsection may be rebutted by substantial competent evidence that shows that the firefighter's cancer was not caused by the occupation of firefighting....
77 P.S. § 414.

The International Agency for Research on Cancer ("IARC") is a specialized research group within the World Health Organization that attempts to identify the causes of human cancers. The agency evaluates various agents, mixtures, and exposures, and classifies them into one of five groups. Group 1 substances are considered "carcinogenic to humans;" Group 2a substances are "probably carcinogenic to humans;" Group 2b substances are "possibly carcinogenic to humans;" Group 3 substances are "not classifiable as to human carcinogenicity;" and Group 4 substances are "probably not carcinogenic to humans." See IARC Monographs on the Evaluation of Carcinogenic Risks to Humans, WORLD HEALTH ORGANIZATION, http://monographs.iarc.fr/ENG/Classification.

Dr. Singer explained that a differential diagnosis "is what we use to list all of the possibilities in terms of diagnosis that a patient can have in terms of diseases, causes of disease." N.T., 12/22/12, at 46. He explained that he then rules out "causes or conditions" before concluding what a patient's most probable diagnosis is and the cause of the diagnosis. See id. at 46.

Dr. Singer authored a supplemental report in which he explained that his review of Sladek's testimony confirmed that Sladek was exposed to multiple Group 1 carcinogens as a firefighter. He specifically acknowledged that Sladek was employed in the fire administration building for a period of time. Singer Report, 4/1/13, at 1. Dr. Singer explained that his "review of [Sladek's] testimony does not change [his] opinion that Mr. Sladek's exposures as a firefighter to diesel fuel emissions, smoke, soot, and contaminated fire protective equipment were substantial contributing factors in his diagnosis with malignant melanoma." Id. at 1-2.

Frye v. U.S. , 293 F. 1013 (D.C. Cir. 1923).

He noted that squamous cell and basal carcinoma are two different skin cancers that may be associated with arsenic exposure. Id. at 159.

The Board reversed the portion of the WCJ order that awarded subrogation to Sladek's health insurer. That portion of the ruling is not before the Court.

Section 301(e) provides:
§ 413. Presumption regarding occupational disease
If it be shown that the employe, at or immediately before the date of disability, was employed in any occupation or industry in which the occupational disease is a hazard, it shall be presumed that the employe's occupational disease arose out of and in the course of his employment, but this presumption shall not be conclusive.
77 P.S. § 414.

The City urges the Court to affirm the Commonwealth Court decision, but suggests a remand to consider the Frye issue is unnecessary because it is within the scope of this Court's review to address the issue. However, the City does not develop any argument with respect to whether the Frye evidentiary standard applies to administrative proceedings.

Act of July 7, 2011, P.L. 251, No. 46, §§ 1, 2.

Occupational diseases are compensable under the Act. Section 301(c)(2) defines the terms "injury," "personal injury," and "injury arising in the course of his employment," as including "occupational disease as defined in Section 108 of this act." 77 P.S. § 411(2). Section 301(a) provides that "[e]very employer shall be liable for compensation for personal injury to, or for the death of each employe, by an injury in the course of his employment, and such compensation shall be paid in all cases by the employer, without regard to negligence ...." 77 P.S. § 431.

We cannot agree with amicus PPFFA that Section 108(r) must be read consistently with prior interpretations of Section 108(o), which defines as an occupational disease "diseases of the heart and lungs... caused by extreme overexertion in terms of stress or danger or by exposure to heat, smoke, fumes or gasses, arising directly out of the employment of any such fireman." 77 P.S. § 27.1(o). According to the PPFFA, both this Court and the Commonwealth Court had held that Section 108(o), which contains the same "caused by" language as is in Section 108(r), does not require a firefighter-claimant to prove general causation. PPFFA Brief at 11 (citing City of Wilkes-Barre v. W.C.A.B. (Zuczek) , 541 Pa. 435, 664 A.2d 90 (1995) and Dillon v. W.C.A.B.(City of Philadelphia) , 853 A.2d 413 (Pa. Commw. 2004).
Contrary to PPFFA's argument, a comparison of the language in Section 108(o) and Section 108(r) is of scant utility in the interpretation of Section 108(r). While both sections use the phrase "caused by" in the text, the similarity ends there. Section 108(o) contains claimant specific elements of proof (e.g., four or more years of service in firefighting; exposure to the named hazards arising directly out of the employment of the firefighter). In contrast, Section 108(r) references only general causation without regard to particulars of the claimant's situation. It is devoid of any specific causation proofs. Instead, Section 301(f) details the proof required to establish a compensable injury by a firefighter with cancer. The design of Sections 108(r) and 301(f), when read together, indicate a clear intention to require proof of general causation under Section 108(r) and specific causation under Section 301(f). Indeed, making the comparison between Sections 108(o) and 108(r) leads to the conclusion that they cannot be interpreted the same way.

We agree with the Commonwealth Court's decision to remand the case to the Board for a determination as to whether, in the first instance, the Act requires an expert to satisfy the Frye standard of Rule 702 of the Pennsylvania Rules of Evidence and to proceed accordingly with respect to the expert testimony of Dr. Singer, claimant's expert. There is evidence of record to question whether Dr. Singer applied generally accepted scientific methodologies.
For example, the City's expert, Dr. Guidotti, testified that there is considerable epidemiological evidence to support a causative relationship between malignant melanoma of the skin and sunlight exposure (sunburn), but no similar evidence to support a causative connection between malignant melanoma and the inhalation of any substance. Dr. Singer, conversely, testified that the inhalation of soot and arsenic is causative of malignant melanoma of the skin. Dr. Guidotti testified that Dr. Singer's review of epidemiological studies to reach this conclusion did not utilize the Bradford Hill criteria universally applied in the field of epidemiology. Dr. Singer stated that he had never heard of the Bradford Hill criteria. Dr. Singer further indicated that he relied upon the total number of epidemiological studies supporting his opinion, without any suggestion that the content of the studies had to be considered. Dr. Guidotti indicated disbelief that any expert would rely upon quantitative number of studies without any consideration of the quality of those studies and the accuracy of their statistical analysis.

In dicta, the Commonwealth Court states that an entitlement to the evidentiary presumption relieved Sladek "of having to rule out other causes for his melanoma." City of Philadelphia Fire Dep't v. W.C.A.B. (Sladek) , 144 A.3d 1011, 1020 (Pa. Commw. 2016), appeal granted sub nom. City of Philadelphia Fire Dep't v. Workers' Comp. Appeal Bd. (Sladek) , 641 Pa. 262, 167 A.3d 707 (Pa. 2017). This pronouncement incorporates an incorrect statement of the relevant law. Regardless of the presumption, Claimants have no statutory burden to rule out other potential causes of their cancers.

See City of Phila. Fire Dept. v. W.C.A.B. (Sladek) , 144 A.3d 1011, 1021-22 (Pa. Cmwlth. 2016) (holding that Sladek was required "to prove that his malignant melanoma is a type of cancer caused by the Group 1 carcinogens to which he was exposed in the workplace. ") (emphasis added).

Majority Opinion at 210 ("To reach the stage of the proceedings at which the employer attempts to rebut the presumption of employment-related causation, the claimant has already carried his or her Section 108(r) burden of proof that his or her cancer is of a type that may be caused by a Group 1 carcinogen. The employer may not rebut the evidentiary presumption merely by revisiting this determination and challenging its accuracy.").

See World Health Organization, IARC Monographs on the Evaluation of Carcinogenic Risks to Humans , vol. 114 (2018), https://monographs.iarc.fr/wpcontent/uploads/2018/06/mono114.pdf (classifying processed meat as a Group 1 carcinogen).

Indeed, the intermediate court specifically explained that a claimant is not required to prove that his cancer was caused by his workplace exposure, and not another cause, to pursue the relevant avenue of benefits recovery under the Workers' Compensation Act. See Sladek , 144 A.3d at 1020.

I acknowledge that the City's argument is at times internally inconsistent, as on the one hand the City transiently asserts that a claimant must prove that his cancer"was 'caused by' direct exposure to an IARC Group 1 carcinogen," Brief for Appellee at 24, but then the City proceeds to equate this statement with the lesser burden of establishing that the claimant suffers from a type of cancer that is causally related to a Group 1 carcinogen to which there was work-related exposure. See id. at 25. Such admixture reflects the same misunderstanding embedded in Claimant's misstatement of the Commonwealth Court's holding, as discussed above. In any event, the latter line of argument (i.e. , the type-of-cancer overlay) represents the main thrust of the City's presentation, which urges that the Commonwealth Court's opinion should be affirmed.

In the broader plane, and left to my own devices, I might question the underlying premise that the definitional aspects of occupational disease must be fully satisfied before any ensuing presumptions regarding work-relatedness could be implemented. See Sladek , 144 A.3d at 1021 ("Once a firefighter establishes that his type of canceris an occupational disease , then he may take advantage of the statutory presumption[.]" (emphasis added) ). In this respect, it would seem that an in pari materia construction -- allowing the presumption to operate within the definitions of occupational diseases unless otherwise proscribed -- would remove the conceptual tension created by the premise and would remediate the pervasive confusion surrounding the occupational disease regime. See, e.g. , supra note 2. Again, however, Claimant's affirmative statement of the burden borne by firefighter-claimants is not to this effect, but rather, substantively aligns with the Commonwealth Court's entire actual holding on the first issue presented.

Significantly, general causation is expressed in terms of "whether a substance is capable of causing a particular injury or condition in the general population"; whereas "specific causation is whether a substance caused a particular individual's injury." Knight, 482 F.3d at 351 (quoting Merrell Dow Pharm., Inc. v. Havner , 953 S.W.2d 706, 714 (Tex. 1997) ); accord 63 Am. Jur. 2 D Products Liability § 71 (2017). Both of these elements of causation generally must be satisfied in toxic disease cases. Indeed, many jurisdictions require plaintiffs in such cases to proceed by a two-step process, proceeding with proof of general causation first. See , e.g., Knight , 482 F.3d at 351.

There are over 120 agents classified as IARC Group 1 carcinogens, many of which are identified by a categorical nexus. See International Agency for Research on Cancer, Agents Classified by the IARC Monographs, Volumes 1-122, available at https://monographs.iarc.fr/agents-classified-by-the-iarc/.

Of course, the issues as presented here do not touch on the requirements imposed by Section 301(f) for a claimant to gain the benefit of a presumption that the cancer arose out of and in the course of the employment. See Majority Opinion, at 207-08 (alluding to the requirements under Section 301(f) ). Accordingly, even short of the in pari materia construction that I have suggested, see supra note 3, it may be that something in the Section 301(f) requirements, as interpreted in a future case, could bear on whether or to what degree general causation is to be determined prior to the rebuttal stage. Absent a determinative ruling on this score, however, I do not believe that employers should be deprived of the ability to address general causation at the rebuttal stage.

It is undisputed that Sladek was diagnosed with cancer and established he was a firefighter for four or more continuous years preceding his cancer diagnosis, he was directly exposed to IARC Group 1 carcinogens, and he had passed a physical examination prior to asserting his claim.