IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia,          :
          Petitioner      :
                         :
      v.               :  No. 1215 C.D. 2020
                         :  SUBMITTED:  April 9, 2021
Estate of Thomas Burke    :
(Workers' Compensation     :
Appeal Board),            :
          Respondent     :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                           FILED:  July 30, 2021

The City of Philadelphia (Employer) petitions this Court for review of the October 30, 2020 order of the Workers' Compensation Appeal Board (Board) affirming the decision of a workers' compensation judge (WCJ), who awarded survivor benefits under the Workers' Compensation Act (Act)[1] to Maria Burke (Claimant), following the death of her husband Thomas Burke (Decedent).  The issues before this Court are whether the WCJ erred in concluding that Decedent's death from lung cancer was caused by an occupational disease under Section 108(o) of the Act,[2] whether Claimant established the last date of Decedent's exposure to an

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

[2] Added by the Act of October 17, 1972, P.L. 930, 77 P.S. § 27.1(o).  Under Section 108(o) of the Act, an occupational disease includes "[d]iseases of the heart and lungs, resulting in either temporary or permanent total or partial disability or death, after four years or more of service in fire fighting for the benefit or safety of the public, caused by extreme over-exertion in times of
**(Footnote continued on next page…)**

occupational hazard, and whether the WCJ erred in concluding that Decedent's 2006 wages should be used to calculate his average weekly wage (AWW). After review, we affirm.

## I. Background

Before discussing the pertinent facts underlying this matter, it is helpful to first review the applicable statutory provisions which govern our disposition.

A claimant seeking benefits for a work-related injury bears the burden of establishing the elements necessary to support an award. *Coyne v. Workers' Comp. Appeal Bd. (Villanova Univ.)*, 942 A.2d 939, 945 (Pa. Cmwlth. 2008). Section 301(c)(1) of the Act[3] provides that the term "injury" includes an occupational disease, as defined in Section 108 of the Act.[4] When a claimant is employed "at or immediately before the date of disability" in an occupation for which the occupational disease is a hazard, a rebuttable presumption arises that the occupational disease arose out of, and in the course of, the claimant's employment.[5]

If a claimant's basis for compensation is death from an occupational disease, Section 301(c)(1) provides that death must occur within 300 weeks after the injury,[6] which is determined by the *"last date of injurious exposure* to the agent causing the disease." *Kimberly Clark Corp. v. Workers' Comp. Appeal Bd. (Bromley)*, 161 A.3d

---

stress or danger or by exposure to heat, smoke, fumes or gasses, arising directly out of the employment of such firemen."

[3] 77 P.S. § 411(1).

[4] 77 P.S. § 27.1.

[5] Section 301(e) of the Act, 77 P.S. § 413.

[6] Three hundred weeks is approximately 5.75 years.

446, 463-64 (Pa. Cmwlth. 2017) (emphasis in original) (internal citations omitted). The burden of proof relating to a decedent's exposure to an occupational hazard is not great, and a WCJ may rely on the testimony of the claimant or other witnesses to prove the existence of, and exposure to, the hazard. *Id.* at 465 (internal citations omitted).

Section 301(c)(2) of the Act likewise provides that compensation for an occupational disease is only available for "**disability or death** resulting from such disease and **occurring within [300] weeks** after the last date of employment in an occupation or industry to which he was exposed to hazards of such disease . . . ." Section 301(c)(2) of the Act, 77 P.S. § 411 (emphasis added). This 300-week period begins to run, not with the last date of employment, but with the last date of workplace exposure. *Cable v. Workmen's Comp. Appeal Bd. (Gulf Oil/Chevron USA, Inc.)*, 664 A.2d 1349 (Pa. 1995) (purpose of the limitations period in Section 301(c)(2) is to limit compensation for occupational diseases to those which manifest themselves within 300 weeks of *exposure* to a hazard).

The Act of July 7, 2011, P.L. 251, No. 46 (Act 46), added Section 108(r) to the Act to provide for the occupational disease of cancer suffered by a firefighter.[7] A claimant seeking compensation under Section 108(r) must establish that he worked continuously as a firefighter for four or more years, that he had direct exposure to a material recognized as a Group 1 carcinogen by the International Agency for Research on Cancer (IARC), and that he passed a physical examination prior to engaging in firefighter duties that did not reveal evidence of cancer.[8]

---

[7] Added by the Act of July 7, 2011, P.L. 251, 77 P.S. § 27.1(r).

[8] Section 301(f) of the Act, 77 P.S. § 414.

Act 46 established a different limitations period for Section 108(r) claims. First, a Section 108(r) claimant must file his claim "within [300] weeks after the last date of employment in an occupation or industry **to which [he] was exposed to the hazards of disease** . . . ." 77 P.S. § 414 (emphasis added). Failure to file within 300 weeks does not preclude a Section 108(r) claim; however, the claimant loses the statutory presumption that his cancer was related to his employment as a firefighter. Additionally, a claim under Section 108(r) must be filed "within [600] weeks after the last date of employment in an occupation or industry to which a claimant was exposed to the hazards of disease . . . ."[9] *Id.* As with the limitations period established generally for occupational diseases in Section 301(c)(2) of the Act, these periods are triggered, not by the claimant's last date of work, but rather by his last day at work "**with exposure to a known Group 1 carcinogen**." *Fargo v. Workers' Comp. Appeal Bd. (City of Phila.)*, 148 A.3d 514, 521 (Pa. Cmwlth. 2016) (emphasis added). A Section 108(r) claim ceases to exist once 600 weeks has elapsed from the date of his last workplace exposure. *Id.*

In short, the nature of the occupational disease does not affect the date upon which the relevant limitation period begins to run, which is last date of workplace exposure. One critical difference remains, however. Section 108(r) claims must be **filed** within 600 weeks of the last date of workplace exposure. All other claims alleging an occupational disease are valid, provided that the occupational disease **manifests within 300 weeks** of the last date of workplace exposure.

In *City of Philadelphia Fire Department v. Workers' Compensation Appeal Board (Sladek)*, 144 A.3d 1011 (Pa. Cmwlth. 2016) (*Sladek I*), *rev'd*, 195 A.3d 197 (Pa. 2018) (*Sladek II*), this Court held that, before a firefighter could avail himself

---

[9] Section 301(f) of the Act, 77 P.S. § 414. Six hundred weeks is approximately 11.5 years.

4

of the presumption that his malignant melanoma was related to his employment, he had to prove that his malignant melanoma was a type of cancer caused by the Group 1 carcinogens to which he was exposed in the workplace; only then would the presumption regarding occupational disease come into play.

The Supreme Court reversed, holding that, while a claimant asserting an occupational disease under Section 108(r) must establish that his cancer is a type that may be caused by exposure to a known Group 1 carcinogen, he is not required to "prove that the identified Group 1 carcinogen **actually** caused [the] claimant's cancer." *Sladek II*, 195 A.3d at 208 (emphasis in original). To rebut the presumption that a claimant's cancer was caused by workplace exposure to a Group 1 carcinogen, the employer must demonstrate (1) the specific agent that caused the claimant's cancer, and (2) that exposure to that agent did not occur as a result of the claimant's employment as a firefighter. *Id.* In other words, the employer must "produce a medical opinion regarding the specific, non-firefighting related cause of [the] claimant's cancer." *Id.*

With this statutory framework in mind, we turn to the facts of the instant matter.

On October 11, 2013, following Decedent's death from lung cancer on November 23, 2011, Claimant filed a fatal claim petition pursuant to Section 108(r) of the Act. Certified Record (C.R.), Item No. 2. Employer denied Claimant's allegations and asserted that her claims were barred by the statute of limitations. *Id.*, Item Nos. 4-5.

## A. Claimant's Evidence

In support of her petition, Claimant testified at an April 2, 2014 deposition, and she presented the deposition testimonies of John Brennan (Brennan), one of Decedent's co-workers, and Barry L. Singer, M.D., a board-certified oncologist.

Claimant testified that Decedent was a firefighter at the time they married on July 24, 1998. C.R., Item No. 21, Claimant's Dep., 4/2/14, at 6. Decedent smoked "less than a pack" of cigarettes per day when they met in June 1997. *Id.* at 9-10. To Claimant's knowledge, none of Decedent's relatives, including his siblings and deceased parents, were ever diagnosed with cancer. *Id.* at 11. Because Claimant was a non-smoker, Decedent did not smoke in the house; instead, he would occasionally go outside to have a cigarette. *Id.* at 12. Decedent first joined the fire department in 1978 and he last worked on July 31, 2006. *Id.* at 6. Decedent was diagnosed with cancer "in 2011." *Id.* Claimant testified that, prior to that time, Decedent "was never sick." *Id.* Claimant and Decedent lived in two houses during their marriage, neither of which had issues with asbestos or radon. *Id.* at 14. Decedent occasionally drank beer. *Id.* at 15. After retiring from the fire department, Decedent stocked shelves at Walmart until August 26, 2011, shortly after he was diagnosed with cancer. *Id.* at 22, 23.

Brennan is a firefighter who worked with Decedent for approximately 15 years before Brennan retired in 2009. C.R., Item No. 22, Brennan Dep., 3/18/14, at 5. During that period, Brennan estimated that they responded to "thousands" of fires at which smoke was present. *Id.* at 16. The firehouse at which they worked did not initially have a diesel fuel emission capture system. *Id.* at 7. Brennan could not recall when such a system was installed. *Id.* Prior to that time, he could smell diesel fuel emissions in both floors of the firehouse. *Id.* Diesel engines on the fire

6

equipment ran inside the firehouse at the beginning of each shift and at the start of a fire response. *Id.* at 9. They also operated throughout a fire response. *Id.* at 12. Firefighters would use a self-contained breathing apparatus (SCBA) during some responses in which they encountered smoke. *Id.* at 13, 15. SCBAs were not in use during exterior fire operations, however, or during overhaul, despite the presence of smoke at those responses. *Id.* at 15. The bunker gear worn by firefighters was covered with soot after a response, and "everybody" had soot on their skin, as well, "usually . . . right around [the] nose." *Id.* at 17-18.

Brennan advised that Decedent smoked and firefighters were allowed to smoke inside the fire house. *Id.* at 19. He considered Decedent a "medium" smoker. *Id.* at 23. Firefighters routinely spent time in the basement of the fire house, which contained laundry facilities, exercise equipment, a television, and ping pong and pool tables. *Id.* at 21. Asbestos was removed from the basement during the period Brennan and Decedent worked there. *Id.* at 20.

Dr. Singer testified generally regarding his understanding of the development and treatment of cancer. He has provided his opinion for approximately 40 to 50 matters involving the relationship between firefighting and the development of cancer. C.R., Item No. 24, Singer Dep., 12/21/12, at 26. Dr. Singer also testified at a May 16, 2014 deposition specifically regarding Decedent's cancer and whether it was related to his employment as a firefighter. C.R., Item No. 23, Singer Dep., 5/16/14, at 5. Dr. Singer has diagnosed and treated patients with cancer for 40 years and approximately one-third of his practice involves the treatment of lung cancer. *Id.* When determining whether a particular individual's cancer is related to his or her work as a firefighter, Dr. Singer reviews medical records and the history of a patient with regard to the cancer involved. *Id.* at 11. His conclusions are made on a

7

case-by-case basis. *Id.* at 12. Dr. Singer opined that epidemiologic studies on the risk of cancer for firefighters are relevant, but an individual's personal exposure, susceptibility, and history are all factors in determining whether he or she develops cancer. *Id.*

Dr. Singer reviewed Decedent's medical records and the depositions of Claimant and Brennan. *Id.* at 14. Dr. Singer understood that, during his tenure as a firefighter, Decedent fought thousands of fires at which he was exposed to smoke. *Id.* at 15-16. Decedent was also exposed to diesel fuel emissions in the firehouse and at fire responses. *Id.* at 16. Decedent's medical records reflected that he was once hospitalized for smoke inhalation. *Id.* at 17. Decedent smoked for approximately 40 years. *Id.* He was diagnosed with metastatic adenocarcinoma of the lung in July 2011. *Id.* at 17-18. Dr. Singer found no indication that Decedent was diagnosed with cancer prior to that time. *Id.* at 24.

Dr. Singer noted that smoke contains several Group 1 carcinogens that specifically relate to lung cancer, including benzopyrene, asbestos, silica, dioxin, and arsenic. *Id.* at 21-22. Based on his review of Decedent's records, Dr. Singer believed Decedent was unquestionably exposed to those carcinogens throughout his career as a firefighter. *Id.* at 24. Diesel fuel emissions are also a Group 1 carcinogen. *Id.* at 26. Dr. Singer agreed that cigarette smoking is a cause of lung cancer. *Id.* at 25. He opined that the irritants caused by exposure to smoke as a firefighter and those caused by cigarette smoking can act synergistically, increasing the risk of developing lung cancer. *Id.* at 27. In Dr. Singer's opinion, Decedent's exposure to diesel exhaust, soot, and smoke were a substantial contributing factor in his developing lung cancer. *Id.* at 29.

Dr. Singer conceded during cross-examination that exposure to smoke varies from firefighter to firefighter, and he had no direct information from Decedent regarding the number of fires he fought throughout his career. *Id.* at 36. He agreed that some epidemiologic studies of firefighters and cancer found no increased risk for the development of lung cancer. *Id.* at 42, 45. Dr. Singer further agreed that 90% of lung cancer cases arise in smokers and that cigarette smoke contains the same Group 1 carcinogens as the smoke Decedent would have encountered as a firefighter. *Id.* at 52, 58. Dr. Singer acknowledged that Decedent was exposed to carcinogens while smoking cigarettes; however, "he also had significant exposure to fires and diesel fuel." *Id.* at 65-66. As a result of his combined exposure to Group 1 carcinogens, Dr. Singer believed that Decedent was at greater risk of developing lung cancer. *Id.* at 66.

### B. Employer's Evidence

Employer presented the deposition testimonies of Drs. Andrew Haas and Tee Guidotti.

Dr. Haas is a board-certified pulmonary critical-care physician whose practice focuses on patients with documented lung abnormalities, including nodules and masses, enlarged lymph nodes, and pleural effusion. C.R., Item No. 30, Haas Dep., 11/14/14, at 7-8. Approximately 65% of Dr. Haas's patients present with a diagnosis of lung cancer or a condition that leads to a diagnosis of lung cancer. *Id.* Dr. Haas found no evidence in Decedent's imaging reports that indicated an exposure to asbestos. *Id.* at 27-28. Given Decedent's history of smoking, Dr. Haas believed the carcinogens in cigarette smoke were the primary agent that caused his lung cancer. *Id.* at 28. Therefore, Dr. Haas opined that Decedent's history of smoking contributed significantly to the development of his lung cancer. *Id.* at 24. Dr. Haas agreed with

9

epidemiologic studies which found no association between firefighters and an increased risk of developing lung cancer. *Id.* at 31-32.

Dr. Haas agreed that Decedent was exposed to diesel fuel exhaust inside the fire house and during fire responses, and he agreed that smoke from fires contains Group 1 carcinogens, including arsenic, asbestos, and dioxin. *Id.* at 38, 42. Dr. Haas's opinion that Decedent's smoking caused his lung cancer was based on the frequency with which Decedent smoked and his "quantifiable exposure" to those carcinogens. *Id.* at 40. Dr. Haas did not believe one could quantify Decedent's exposure to carcinogens during his career as a firefighter. *Id.* at 40. He conceded that a smoker presenting with additional risk factors for lung cancer, such as family history, would have an increased risk of developing lung cancer. *Id.* at 43.

Dr. Guidotti is board certified in internal, pulmonary, and occupational medicine. C.R., Item No. 29, Guidotti Dep., 1/21/13, at 10. He is also trained in the fields of epidemiology and toxicology, and has investigated the relationship between firefighters and their exposure to occupational and environmental hazards. *Id.* at 12, 15-16. Dr. Guidotti distinguished his training from Dr. Singer's oncology background, opining that oncologists are trained in cancer diagnosis and management, but not with respect to the causes of cancer. *Id.* at 12.

Dr. Guidotti reviewed several reports authored by Dr. Singer in conjunction with matters involving other firefighters who claimed their cancers were the result of occupational diseases. *Id.* at 20-21. He was unable to determine the methodology Dr. Singer used to arrive at his conclusions regarding the relationship between firefighters and occupational disease. *Id.* at 22. Moreover, Dr. Guidotti felt Dr. Singer lacked the expertise and knowledge required to prove general causation in the area of occupational disease. *Id.* at 24. Dr. Guidotti did not provide an opinion

10

as to whether Decedent's cancer was caused by his exposure to carcinogens while employed as a firefighter.

### C. First WCJ Decision

The WCJ granted Claimant's fatal claim petition in a decision circulated on February 2, 2016. C.R., Item No. 6. The WCJ credited Claimant's testimony regarding her relationship with Decedent and Brennan's testimony as to his experiences working with Decedent as a firefighter. *Id.*, Finding of Fact (F.F.) Nos. 6-7. The WCJ found that Decedent worked continuously as a firefighter for more than four years, during which period he was exposed to IARC-identified Group 1 carcinogens, and his last date of employment was July 31, 2006. *Id.*, F.F. Nos. 8, 10(a). The WCJ further found that Decedent was not diagnosed with cancer until after his exposure ceased. *Id.* The WCJ credited Dr. Singer's opinion that Decedent's work as a firefighter was a significant contributing factor in the development of his lung cancer. *Id.* The WCJ rejected Dr. Haas's opinion that Decedent's cigarette smoking was the sole cause of his lung cancer. *Id.* He rejected the testimony of Dr. Guidotti to the extent it contradicted Dr. Singer's testimony. *Id.*, F.F. No. 9.

Based on these findings and credibility determinations, the WCJ concluded that Claimant was entitled to the statutory presumptions available for claims under Sections 108(o) and 108(r) of the Act. *Id.*, F.F. Nos. 8, 10(b)-(d). Furthermore, having rejected the opinions of Employer's experts, the WCJ found that Employer failed to overcome the presumption that Decedent's cancer was related to his work as a firefighter. *Id.*, F.F. Nos. 8-9. Therefore, the WCJ granted Claimant's fatal claim petition and awarded her 51% of Decedent's AWW as of July 31, 2006, from November 23, 2011, and ongoing. *Id.* at 15. The WCJ directed Employer to produce

11

a statement of Decedent's wages as of July 31, 2006, for purposes of calculating his AWW. *Id.*

Employer appealed to the Board, challenging Claimant's entitlement to the statutory presumption available for either Section 108(o) or Section 108(r) claims, as her fatal claim petition was filed more than 300 weeks from Decedent's last possible workplace exposure to a IARC-identified Group 1 carcinogen, and the WCJ made no findings that Decedent was ever exposed to heat, smoke, fumes, or gasses during his employment as a firefighter. Employer also argued that Dr. Singer's testimony was incompetent.

This Court issued its decision in *Sladek I* while Employer's appeal was pending before the Board. In light of that decision, the Board remanded the matter to the WCJ for reconsideration of Claimant's entitlement to the statutory presumption applicable to her Section 108(r) claim. C.R., Item No. 9. The Board also directed that the remaining issues raised in Employer's appeal should be addressed by the WCJ on remand. *Id*.

### D. Second WCJ Decision

The WCJ circulated a second decision on June 11, 2019, in which he largely reiterated his previous findings of fact and conclusions of law. C.R., Item No. 11. With regard to the Board's directive that the WCJ reconsider his application of the statutory presumption, the WCJ found that the Board's remand order was "in part" rendered moot by the Supreme Court's holding in *Sladek II* that a claimant seeking benefits under Section 108(r) only need demonstrate that his cancer is a type caused by Group 1 carcinogens.

The WCJ found that Claimant was entitled to the presumption in Sections 301(e) and 301(f) that Decedent's cancer was related to his employment as a firefighter because he worked continuously as a firefighter for more than four years, during which he was exposed to IARC-identified Group 1 carcinogens, including diesel exhaust and smoke, and Decedent was not diagnosed with cancer until after his exposure ceased. The WCJ once again rejected the opinions of Drs. Haas and Guidotti as not credible or persuasive, and concluded that Employer's evidence failed to rebut the statutory presumption that Claimant's cancer was caused by his employment as a firefighter. *Id.*, F.F. No. 9. The WCJ granted Claimant's fatal petition and directed payment of 51% of Decedent's AWW from November 23, 2011, ongoing, and directed that Employer produce a statement of Decedent's wages as of July 31, 2006, for purposes of calculating his AWW. *Id.*

Employer appealed to the Board, which affirmed. This appeal followed.[10]

## II. Issues

Employer raises the following issues on appeal: 1) whether the WCJ erred in concluding that Decedent suffered from an occupational disease under Section 108(o) of the Act; 2) whether Claimant established the last date of Decedent's exposure to an occupational hazard; and 3) whether the WCJ erred in concluding that Decedent's 2006 wages should be used to calculate his AWW.

---

[10] Our review of an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated, or whether an error of law was committed. *Walter v. Workers' Comp. Appeal Bd. (Evangelical Cmty. Hosp.)*, 128 A.3d 367, 371 n.5 (Pa. Cmwlth. 2015).

13

### III.    Discussion

First, we address whether the WCJ erred in awarding Claimant benefits pursuant to Section 108(o) of the Act, which provides that an occupational disease includes:

> [d]iseases of the heart and lungs, resulting in either temporary or permanent total or partial disability or death, after four years or more of service in fire fighting for the benefit or safety of the public, caused by extreme over-exertion in times of stress or danger or by exposure to heat, smoke, fumes or gasses, arising directly out of the employment of such firemen.

77 P.S. § 27.1(o).

Employer argues that the WCJ exceeded the scope of review set forth in the Board's remand order, which Employer maintains was limited to re-weighing the evidence in light of this Court's decision in *Sladek I* and determining Claimant's entitlement to benefits under Section 108(r) for cancer suffered by a firefighter.  As a result, Employer contends it limited its defense on remand to Claimant's Section 108(r) claim, and it was denied the opportunity to defend against an award of benefits under Section 108(o).  Additionally, Claimant's fatal claim petition only cited Section 108(r) as a means of recovery, and at no time did she amend her petition to seek benefits under a different provision of the Act.

We agree that the Board's remand order did not directly address the WCJ's award of benefits under Section 108(o).  Rather, the Board directed the WCJ to reconsider his decision in light of *Sladek I*, which implicated Claimant's right to benefits under Section 108(r) of the Act.  However, the Board also directed that the WCJ address Employer's remaining issues raised in its appeal to the Board.  C.R., Item No. 9, at 5 n.5.  As that appeal explicitly challenged the WCJ's award of

14

benefits under Section 108(o) of the Act, Employer was clearly on notice that the WCJ would address Claimant's entitlement to benefits under Section 108(o), and, therefore, Employer's argument that it was denied the opportunity to defend against such a claim is, at best, disingenuous.

We must also reject Employer's argument to the extent it suggests the WCJ lacked authority to grant benefits under a different provision of the Act than cited by Claimant in her fatal claim petition, as a claimant's petition will be considered as filed under any section of the Act to which he or she is entitled to relief. *See Caffey v. Workers' Comp. Appeal Bd. (City of Phila.)*, 185 A.3d 437 (Pa. Cmwlth. 2018).

Next, we address whether Claimant established the last date of Decedent's workplace exposure to an occupational hazard. Employer concedes that Decedent's last date of work as a firefighter was July 31, 2006. However, the WCJ made no such finding regarding Decedent's last date of exposure to a Group 1 carcinogen. Because this second, and unknown, date is the one that triggers the limitation period for filing an occupational disease claim, Employer argues that Claimant cannot demonstrate that her fatal claim petition was timely filed. In affirming the WCJ, the Board simply assumed the last date of Decedent's employment was also his last date of exposure to an occupational hazard. Employer submits that such an assumption constitutes reversible error.

We discern no error by the Board, as the record demonstrates that Decedent's last date of exposure was July 31, 2006. When considering whether the WCJ's decision is supported by substantial evidence, this Court must view the evidence in the light most favorable to Claimant, as she was the party who prevailed before the WCJ, and we are to draw all reasonable inferences that are deducible from the evidence in support of that decision. *Wawa v. Workers' Comp. Appeal Bd. (Seltzer)*,

15

951 A.2d 405, 408 (Pa. Cmwlth. 2008). The WCJ concluded that Claimant was entitled to survivor benefits under Section 108(o) of the Act, which required that she establish Decedent died within 300 weeks (roughly 5.75 years) of his last known exposure to an occupational hazard. While the WCJ did not make a specific finding as to the date of last exposure, he did find that Decedent's last date of work was July 31, 2006, and that "during his work" Decedent was exposed to Group 1 carcinogens. C.R., Item No. 6, F.F. No. 8. Moreover, the WCJ credited Brennan's testimony that diesel engines ran inside the firehouse twice daily during equipment checks. As a result, the record demonstrates that Decedent was exposed daily to diesel fuel emissions, a Group 1 carcinogen. Such exposure would necessarily include July 31, 2006, his last day of work as a firefighter. Therefore, the record demonstrates that Decedent would have been exposed to an occupational hazard on his last date of work, approximately five years and four months prior to his death from lung cancer on November 23, 2011.

Accordingly, Claimant's fatal claim petition was timely, as Decedent's November 2011 death from lung cancer falls within the 300-week period set forth in Section 301(c)(1) of the Act. Claimant's Section 108(r) claim was also timely filed, as Section 301(c)(2) only requires that it be filed within 600 weeks, or 11.5 years, of Decedent's last workplace exposure.

Finally, we address whether the WCJ incorrectly calculated Decedent's AWW. Employer argues that Decedent's wages should be calculated based on the date his disability arose in July 2011. Therefore, his earnings from Walmart, Decedent's employer at the time of his cancer diagnosis, and not his AWW as a firefighter at the time he retired, should govern the amount of compensation Claimant receives. Otherwise, Claimant stands to receive compensation at a rate

16

higher than that which Decedent earned at the time he was disabled. Employer further argues that the WCJ improperly placed the burden of establishing Decedent's wages on Employer when he directed that Employer provide a statement of Decedent's wages as of July 31, 2006.

We reject Employer's argument, as this Court has previously addressed the issue of wage calculation for occupational disease matters in *Fisk v. Workmen's Compensation Appeal Board (General Electric)*, 633 A.2d 1305 (Pa. Cmwlth. 1993). In *Fisk*, we held that a claimant in an occupational disease matter is entitled to benefits based on his wages at the time of his last exposure to the occupational hazard. This Court recognized that, in such cases, calculation of benefits as of the date a claimant's occupational disease manifested itself would result in an illogical and unjust result for those employees who are unemployed or retired as of the manifestation date, as they would have no earnings upon which to base an award. *Fisk*, 633 A.2d at 1307. Therefore, we concluded that "for the purpose of calculating benefits in occupational disease cases under the Act, the date of injury must be the date of last exposure." *Id.*

As Decedent's last date of exposure to the occupational hazard took place on July 31, 2006, the Board correctly affirmed the WCJ's decision directing the payment of benefits based on Decedent's wages as of that date. We likewise dismiss Employer's suggestion that the WCJ and Board improperly placed the burden of ascertaining the amount of those wages on Employer, as Employer was the entity in possession of records relating to Decedent's actual wages and his AWW, and Employer has not asserted that such information is unavailable.

## IV. Conclusion

As we have concluded that the WCJ did not exceed the scope of the Board's September 20, 2017 remand order, the record supports a finding that Decedent's last date of exposure to an occupational hazard was July 31, 2006, and the WCJ correctly found that Claimant's benefits should be calculated as of Decedent's last date of exposure, we affirm the Board.

_____
ELLEN CEISLER, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia,      :
          Petitioner    :
                       :
      v.                :  No. 1215 C.D. 2020
                       :
Estate of Thomas Burke    :
(Workers' Compensation    :
Appeal Board),           :
          Respondent  :

## **O R D E R**

AND NOW, this 30th day of July, 2021, the October 30, 2020 order of the Workers' Compensation Appeal Board is hereby AFFIRMED.

_____
ELLEN CEISLER, Judge