633 A.2d 1305

**Winfield FISK, Petitioner,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (GENERAL ELECTRIC and Electric Mutual Liability Insurance Company), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted July 9, 1993.

Decided Nov. 9, 1993.

Robert J. Murphy, for petitioner.

William M. Bendon, for respondents.

Before PALLADINO and FRIEDMAN, JJ., and NARICK, Senior Judge.

PALLADINO, Judge.

Florence Fisk (Claimant) appeals from an order of the Workmen's Compensation Appeal Board (Board) which affirmed a referee's award of benefits under The Pennsylvania Workmen's Compensation Act (Act).[1]  We affirm.

The following facts are not in dispute.  Winfield Russell Fisk (the decedent) was employed by General Electric (Employer) as a field service engineer from 1943 until his retirement on November 30, 1980.  During the course of his employment with Employer, the decedent was exposed to asbestos materials and products.

Following his retirement from Employer, the decedent became employed as a consultant for another company.  The decedent was not exposed to asbestos while in that company's employ.  On April 3, 1986, the decedent was hospitalized and diagnosed as suffering from asbestos-related lung disease.  As a result of the lung disease, the decedent was unable to return to work.  The decedent subsequently filed a claim for disability benefits.

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1031.

On March 18, 1987, the decedent died. Claimant, the decedent's surviving spouse, then filed a fatal claim petition.

Following hearings, the referee concluded that the decedent sustained his burden of proving that he suffered from an occupational disease as a result of his exposure to asbestos throughout the course of his employment with Employer; that the decedent became totally disabled on April 3, 1986 as a result of the occupational disease; and that the decedent died from mesothelioma and pulmonary asbestosis as a result of work-related exposure to asbestos.

The referee awarded compensation on the lifetime claim at a rate based on the decedent's average weekly wage in 1986, the year in which he became disabled. The referee awarded compensation on the fatal claim petition at a rate based on the decedent's wage at the time of his death. The referee also granted Claimant's request that penalties in the amount of twenty percent (20%) be imposed on Employer.[2]

Employer appealed to the Board, asserting among other things that the referee awarded benefits at the incorrect rate. The Board agreed and remanded the case to the referee for findings as to the decedent's average weekly wage in 1980, the time of the decedent's injury, e.g., the year in which the decedent was last exposed to asbestos. The Board also reversed the referee's imposition of penalties.

On remand, the referee recalculated the award of benefits based on the decedent's average weekly wage in 1980. Claimant appealed to the Board. Employer filed a cross appeal nunc pro tunc, asserting that although the referee correctly recalculated the award based on the decedent's earnings in 1980, the referee erred in failing to impose the Statewide average weekly wage in effect for 1980.[3] The Board affirmed

2. In addition, the referee awarded to Claimant medical and hospital expenses, funeral expenses and counsel fees.

3. Section 105.1 of the Act, 77 P.S. § 25.1, defines "Statewide average weekly wage" as "that amount which shall be determined annually by the [D]epartment [of Labor and Industry] for each calendar year on the basis of employment covered by the Pennsylvania Unemployment Com-

the decision of the referee without addressing Employer's argument.

Claimant filed a timely appeal with this court. Employer filed a cross appeal which was later discontinued.

On appeal to this court, two issues are presented: 1) whether the Board erred in directing the referee to recalculate the award of benefits with respect to the decedent's lifetime claim petition as well as Claimant's fatal claim petition based upon the decedent's wage at the time that he was last exposed to asbestos; and 2) whether the Board erred in reversing the referee's assessment of penalties against Employer.[4]

With regard to the first issue, Claimant asserts that lifetime benefits arising out of the decedent's occupational disease must be awarded based on the rate of compensation in effect on the date the decedent's disability manifested itself. Claimant further asserts that benefits for death arising out of an occupational disease must be awarded based on the rate of compensation in effect on the decedent's date of death.

Although Claimant's assertions in her brief are correct that an occupational disease does not become compensable until it manifests itself into a loss of earning power, the date of manifestation does not determine the rate at which benefits are paid. The date of manifestation is important in that it determines the date on which the payment of benefits begins. However, the law is clear that compensation under the Act is to be based upon the wages that an employee was receiving at the time of injury. Section 309 of the Act, 77 P.S. § 582; *Ringgold School District v. Workmen's Compensation Appeal Board (Belak)*, 96 Pa.Commonwealth Ct. 111, 507 A.2d 876 (1986).

pensation Law for the twelve-month period ending June 30 preceding the calendar year."

4. Our scope of review is limited to determining whether constitutional rights were violated, an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Sebro)*, 132 Pa.Commonwealth Ct. 288, 572 A.2d 843 (1990).

Although we acknowledge that determining the date of injury can be somewhat problematic in occupational disease cases, we note that the Board's regulations provide guidance in calculating an employee's weekly wage. Pursuant to 34 Pa.Code Section 121.14, "[t]he weekly wage [in occupational disease cases] will be determined in accordance with section 309 of the act (77 P.S. § 582), and will be subject to the maximum rate in effect at the date of last exposure."

■ We note that if we were to accept Claimant's position that benefits are to be awarded based on the rate of compensation in effect on the date that an employee's disability manifests itself into a loss of earning power, an illogical and unjust result would occur for those employees who are unemployed or retired as of the manifestation date and thus have no earnings upon which to base an award. We, therefore, conclude that for the purpose of calculating benefits in occupational disease cases under the Act, the date of injury must be the date of last exposure. As such, we further conclude that the Board did not err in directing the referee to recalculate the award of benefits with respect to the decedent's lifetime claim petition and Claimant's fatal claim petition based on the decedent's wage at the time of his last exposure to asbestos.

■ With respect to the second issue, Claimant asserts that the referee exercised his sound discretion when he imposed penalties against Employer for unreasonable delay. Specifically, Claimant cites Employer's refusal to pay compensation without issuing a notice of compensation payable, its failure to file an answer to the fatal claim petition and its failure to file its proposed findings of fact and conclusions of law within the time frame prescribed by the referee. Claimant also asserts that instead of issuing a notice of compensation payable, Employer filed an answer denying the decedent's claim and imposed upon Claimant "the unnecessary burden of establishing [her] entitlement to lifetime and fatal benefits." Claimant's Brief at 25. It is, therefore, Claimant's position that the

Board erred in reversing the referee's assessment of penalties against Employer. We disagree.

Pursuant to Section 435(d)(i) of the Act,

(d) The department, the board, or any court which may hear any proceedings brought under this act shall have the power to impose penalties as provided herein for violations of the provisions of this act or such rules and regulations or rules of procedure:

(i) Employers and insurers may be penalized a sum not exceeding ten per centum of the amount awarded and interest accrued and payable: Provided, however, That such penalty may be increased to twenty per centum in cases of unreasonable or excessive delays.

77 P.S. § 991(d)(i).

This court has previously held that under this section, no penalty may be imposed absent proof of a violation of the Act or of the rules of the department or the Board. *Spangler v. Workmen's Compensation Appeal Board (Ford)*, 145 Pa.Commonwealth Ct. 56, 602 A.2d 446 (1992).

In the instant case, the referee found that Employer "unjustifiably and unreasonably denied and delayed payment of compensation without any reason, justification or basis, and a penalty is assessed against the employer...." Referee's Decision and Order of August 22, 1989, Finding of Fact No. 16. However, on appeal to the Board, the Board found that Claimant presented no evidence establishing a violation of the Act and that the imposition of penalties against Employer was therefore improper.

An independent review of the record by this court indicates that Claimant did not present any evidence that Employer violated the provisions of the Act. Absent proof of a violation of the Act or of the rules of the department or the Board, penalties may not be imposed. Therefore, we conclude that the Board did not err in reversing the referee's imposition of penalties against Employer.

Accordingly, the order of the Board is affirmed.

## *ORDER*

AND NOW, November 9, 1993, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is affirmed.