IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia,                    :
                Petitioner          :
                              :
        v.                                :      No. 923 C.D. 2021
                             :      Submitted: October 8, 2024
Larry Thompson (Workers'                 :
Compensation Appeal Board),              :
                Respondent          :

BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE MATTHEW S. WOLF, Judge
              HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY SENIOR JUDGE LEAVITT              FILED: March 19, 2025

The City of Philadelphia (Employer) petitions for this Court's review of an adjudication of the Workers' Compensation Appeal Board (Board) that awarded survivor benefits to Robin Thompson (Claimant) for the work-related death of her husband, Larry Thompson (Decedent). In doing so, the Board affirmed the decision of a workers' compensation judge (WCJ) that Decedent's cancer was caused by his work as a firefighter. On appeal, Employer argues that the WCJ and the Board erred because the fatal claim petition was untimely filed and because Claimant did not satisfy the prerequisites for the statutory presumption in the Workers' Compensation Act (Act)[1] that can be used to establish that a firefighter's cancer was caused by his employment.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2710.

**Background**

In 2016, Claimant filed a fatal claim petition alleging that Decedent's lymphoma, which caused his death on May 11, 2013, resulted from his work as a firefighter for Employer. On May 4, 2018, the WCJ granted the petition, concluding that Decedent's non-Hodgkin's lymphoma was work related. Employer appealed, asserting that because the fatal claim petition was filed more than three years after Decedent's date of death, it was untimely under Section 315 of the Act, 77 P.S. §602. The Board remanded the matter to the WCJ to determine whether Claimant's petition was filed on May 6, 2016, or on June 7, 2016. The Board explained that in their respective arguments, the parties used documents that were not in the record. The Board remanded for the WCJ to make a finding on the filing date. The Board also directed that, on remand, the WCJ should consider the petition in light of the Supreme Court's then-recent decision in *City of Philadelphia Fire Department v. Workers' Compensation Appeal Board (Sladek)*, 195 A.3d 197 (Pa. 2018) (*Sladek II*).

On September 14, 2020, a different WCJ issued the remand decision. The WCJ found that the petition was electronically filed on May 6, 2016, which fell within three years of Decedent's death; thus, the petition was timely under Section 315 of the Act. One summary in the Workers' Compensation Automation and Integration System (WCAIS) showed a "received date" of June 7, 2016, for the petition. Reproduced Record at 554 (R.R. __).[2] Another document in the WCAIS showed a "date filed" of May 6, 2016. R.R. 256. This latter date was confirmed in

---

[2] Pennsylvania Rule of Appellate Procedure 2173 requires that the reproduced record be numbered in Arabic figures followed by a small "a." Pa.R.A.P. 2173. The reproduced record does not comply with Rule 2173 because it only utilizes Arabic figures. For convenience, we cite to each page as paginated by Employer.

a letter from Claimant's counsel to Employer dated May 6, 2016, and it was the date used by the WCJ to make her finding.

As to *Sladek II*, the WCJ concluded that Claimant's evidence established the prerequisites to the statutory presumption set forth in Sections 108(r)[3] and 301(f)[4] of the Act and, thus, proved that Decedent's cancer was caused by his employment.

The WCJ credited Claimant's testimony that Decedent worked for Employer as a firefighter from 1985 to October of 2010; worked in many firehouses; and often came home smelling like smoke. The WCJ also credited the testimony of Joseph Discher, who worked with Decedent at Task Force 30 and then as his supervisor at Ladder 25. Discher saw Decedent fight fires in which he was exposed to smoke with no self-contained breathing apparatus or other personal protective equipment. Discher testified that Decedent was also exposed to diesel exhaust emissions from the ladder trucks that were operated inside the firehouse during daily equipment checks. "[E]very couple months or so," the firefighters would have to scrub the soot from the diesel exhaust from the walls. Discher Dep. at 11; R.R. 206. The firehouses were not equipped with diesel fuel capture systems. Discher acknowledged that he did not fight fires with Decedent after 2001 and agreed that although some fire calls involved accidents and not fires, "[l]adder companies basically just go to structure fires." Discher Dep. at 25; R.R. 220.

The WCJ credited the expert testimony of Tee Guidotti, M.D., who is board certified in internal, pulmonary and occupational medicine and trained in the fields of toxicology and epidemiology. Dr. Guidotti opined that Decedent probably

---

[3] Added by the Act of July 7, 2011, P.L. 251, 77 P.S. §27.1(r).
[4] Added by the Act of July 7, 2011, P.L. 251, 77 P.S. §414.

3

had marginal zone B-cell lymphoma, which is an uncommon cancer, or else a diffuse large B-cell lymphoma, which is more common. They are "all part of a big family[]" and can "transform into one another" because they are "the same cell type[.]" Guidotti Dep. at 21; R.R. 46.

Dr. Guidotti testified that the "B-cell line" of lymphomas can be elevated by carcinogens found at fire scenes. Guidotti Dep. at 35; R.R. 60. Dr. Guidotti identified the Group 1 carcinogen, trichloroethylene (TCE), as one related to the formation of B-cell lymphoma. Decedent's assignment to ladder companies indicated his frequent exposure to fire smoke. In addition, diesel-powered engines and ladders filled the firehouses with diesel exhaust, exposing the firefighters "to a variety of potential carcinogens that arise from [] diesel exhaust that are well-documented [International Agency for Research on Cancer (IARC)] group 1 and 2A carcinogens."[5] Guidotti Dep. at 26; R.R. 51.

Dr. Guidotti testified that while "not many studies have been done that hone down on particular lymphomas," the relationship between TCE and diffuse B-cell lymphoma "is not under serious dispute." Guidotti Dep. at 36-37; R.R. 61-62. The scientific literature shows an elevated risk for diffuse large B-cell lymphoma

---

[5] The Supreme Court has explained IARC as follows:

> The IARC is a specialized research group within the World Health Organization that attempts to identify the causes of human cancers. The agency evaluates various agents, mixtures, and exposures, and classifies them into one of five groups. Group 1 substances are considered "carcinogenic to humans;" Group 2A substances are "probably carcinogenic to humans;" Group 2B substances are "possibly carcinogenic to humans;" Group 3 substances are "not classifiable as to human carcinogenicity;" and Group 4 substances are "probably not carcinogenic to humans."

*Sladek II*, 195 A.3d at 200 n.4 (citing IARC Monographs on the Evaluation of Carcinogenic Risks to Humans, WORLD HEALTH ORGANIZATION, https://www.iarc.who.int/wp-content/uploads/2018/07/Monographs_Back_QA.pdf (last visited March 18, 2025)).

given the exposures known to occur in firefighting. Dr. Guidotti opined that Decedent's occupation as a firefighter put him at an increased risk for the cancer from which he died.

Dr. Guidotti also considered Decedent's potential risk factors and his medical history of smoking, diabetes, hepatitis C, and a heart condition. Hepatitis C can cause splenic marginal zone lymphoma, a subtype of marginal zone lymphoma that would cause a "massively enlarged spleen," but Decedent did not have an enlarged spleen. Guidotti Dep. at 22; R.R. 47. Guidotti testified that people who have diabetes "are at some slight increased risk" for developing B-cell lymphoma, but that risk is less than the risk reported for firefighters. Guidotti Dep. at 45; R.R. 70.

On cross-examination, Dr. Guidotti noted that IARC recognized 2, 3, 7, 8 tetrachloro dibenzo-para-dioxin (dioxin) as a Group 1 carcinogen related to the formation of non-Hodgkin's lymphoma. Guidotti testified that dioxin is present at fire scenes and is "a very potent promoter" of cancer. Guidotti Dep. at 135; R.R. 160. Dr. Guidotti acknowledged that his report stated that the IARC classifies TCE as a Group 1 carcinogen for kidney cancer and a Group 2A carcinogen for lymphomas.

Employer presented the testimony of Howard Sandler, M.D., an expert in occupational and environmental medicine. Dr. Sandler agreed that Decedent died from B-cell lymphoma, specifically diffuse large B-cell lymphoma. People in their late 50s and 60s have an increased risk of developing B-cell lymphoma, and Decedent fit into that age group. Dr. Sandler testified that it is not known what causes the majority of B-cell lymphomas. TCE is a Group 1 carcinogen for kidney cancer, and it has been primarily studied for those who work in the aerospace

5

manufacturing industry. In Dr. Sandler's view, TCE is not correlated to the development of non-Hodgkin's lymphoma, regardless of exposure duration or intensity. He opined that Decedent's cancer was not the result of working in a ladder or engine company and stated that there was no correlation between his cancer and his work as a firefighter. Dr. Sandler testified that studies have associated hepatitis C and diabetes with an increased risk for development of non-Hodgkin's lymphoma, which could have caused Claimant's disease.

In response, Claimant presented a June 29, 2017, rebuttal report from Dr. Guidotti. He again opined that there was no question, given the chemicals to which Decedent was exposed and the elevated risk for non-Hodgkin's lymphoma among career firefighters, that Decedent's occupation substantially contributed to his risk of lymphoma. He opined that Decedent's lymphoma arose out of his firefighting exposures.

The WCJ credited Dr. Guidotti's testimony over Dr. Sandler's, explaining that Dr. Guidotti was more qualified to testify in light of the many articles he had published on the issue of cancer in firefighting service. Further, Dr. Guidotti's opinion was supported by IARC monographs and the medical literature.

Based on the credited testimony of Dr. Guidotti, Claimant, and Discher, the WCJ found that Decedent last worked as a firefighter in October 2010; that he worked more than four years in continuous firefighting duties prior to his cancer diagnosis; and that his pre-employment physical examination did not reveal any evidence of cancer. Decedent's employment exposed him to soot, smoke, and diesel fuel emissions that included Group 1 carcinogens. Claimant's evidence established a causative link between Decedent's B-cell, non-Hodgkin's lymphoma and the Group 1 carcinogen, dioxin. Given these findings, Claimant was entitled to the

6

statutory presumption in Section 301(f) of the Act that Decedent's cancer was caused by his firefighting duties. Employer did not rebut the presumption because Dr. Sandler did not provide an unequivocal opinion that Decedent's cancer was caused by another agent.

The WCJ awarded Claimant 51% of Decedent's average weekly wage that he was earning when he last worked in 2010. The WCJ ordered Employer to prepare a statement of wages using October 2010 as the date of injury and to begin paying Claimant 51% of Decedent's average weekly wage, in no event to be less than 51% of the statewide average weekly wage for 2010, which was $430.95.[6]

Employer appealed. The Board affirmed the WCJ's decision and held that substantial evidence supported the WCJ's finding that the fatal claim petition was electronically filed and received in the WCAIS on May 6, 2016, which was within three years of Decedent's death under Section 315 of the Act. The Board agreed that Claimant's evidence established her entitlement to the presumption of compensability under Section 301(f) of the Act. As such, the burden shifted to Employer to establish that firefighting did not cause Decedent's cancer. Because the WCJ rejected the testimony of Employer's expert, Employer did not rebut the presumption.

Employer petitioned for this Court's review.

## Appeal

On appeal,[7] Employer raises three issues for our consideration. First, Employer argues that the Board erred in affirming the WCJ's finding that Claimant

---

[6] The WCJ calculated 51% of the statewide average weekly wage for 2010 to be $422.50. The Board noted that the statewide average weekly wage for 2010 was $845.00, and 51% of that amount should be $430.95. Board Adjudication at 13, n.6.

[7] Our review of an adjudication of the Board determines whether the necessary findings of fact are supported by substantial evidence, whether the Board procedures were violated, whether

7

filed a timely fatal claim petition. Second, and in the alternative, Employer argues that the Board erred in holding that Claimant met her evidentiary burden under Sections 108(r) and 301(f) of the Act and, thus, was entitled to the statutory presumption that Decedent's cancer was work related. Third, Employer argues that the WCJ erred in calculating Claimant's survivor benefits on the basis of Decedent's earnings in 2010, as opposed to his earnings at the time of death. We address these issues *seriatim*.

## I. Timeliness of Fatal Claim Petition

In its first issue, Employer argues that the Board erred in holding that Claimant filed a timely fatal claim petition. A regulation of the Bureau of Workers' Compensation (Bureau) states that where a petition does not contain a postmark or postal receipt, the filing date is the date on which the Bureau received the petition. 34 Pa. Code §121.3(c). Employer's documentary evidence showed that Claimant's fatal claim petition was "received" by the Bureau on June 7, 2016. R.R. 554. Because that was more than three years after Decedent's death on May 11, 2013, the petition was untimely under Section 315 of the Act.

Claimant counters that the WCJ found that she filed the fatal claim petition electronically on May 6, 2016, and that finding is supported by substantial evidence. A log in the WCAIS showed a filing date of May 6, 2016, and a letter of counsel to Employer confirmed that date. Claimant noted that this issue has been litigated twice before two WCJs, and they reached the same conclusion: the claim petition was electronically filed, and received, on May 6, 2016.

Section 315 of the Act provides, in pertinent part:

---

constitutional rights were violated, or whether an error of law was committed. *Walter v. Workers' Compensation Appeal Board (Evangelical Community Hospital)*, 128 A.3d 367, 371 n.5 (Pa. Cmwlth. 2015).

> In cases of personal injury all claims for compensation shall be forever barred, unless, within three years after the injury, the parties shall have agreed upon the compensation payable under this article; or unless within three years after the injury, one of the parties shall have filed a petition as provided in article four hereof. *In cases of death all claims for compensation shall be forever barred*, unless within three years after the death, the parties shall have agreed upon the compensation under this article; *or unless, within three years after the death, one of the parties shall have filed a petition as provided in article four hereof.*

77 P.S. §602 (emphasis added). Section 121.3(c) of the Bureau regulation further provides:

> (c) The filing date is the date indicated on the United States Postal Service postmark or postal receipt. *If the postmark or postal receipt is absent or unreadable, the filing date is the date of receipt by the Bureau. In all other instances, including electronic filing or hand-delivery, the filing date is the Bureau's date of receipt.*

34 Pa. Code §121.3(c) (emphasis added). In short, the "date of receipt" governs the filing date whenever a petition is filed electronically. *Id*.

On remand before the WCJ, the parties submitted additional evidence relevant to the date of the petition's filing. Claimant's counsel produced a copy of a letter she sent to Employer, dated May 6, 2016, stating "[e]nclosed please find a copy of a Fatal Claim Petition, that we filed electronically with the Bureau []." R.R. 557. A printout from WCAIS, titled "Claim Summary-External," showed that the fatal claim petition was "received" on June 7, 2016. R.R. 554. However, a business event log on WCAIS showed "petition filed" on May 6, 2016; "address changed" for both Claimant and Employer on June 7, 2016; and "petition accepted" on June 8, 2016. R.R. 561. Based on the log and counsel's letter, the WCJ found that Claimant filed the fatal claim petition electronically on May 6, 2016.

9

The relevant inquiry in a substantial evidence analysis is not whether "there is evidence in the record which supports a factual finding contrary to that made by the WCJ" but, rather, "whether there is any evidence which supports the WCJ's factual finding." *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998). The Court views the evidence in a light most favorable to the party that prevailed before the factfinder. *Id*. While there are inconsistencies in the documentary evidence, the WCJ's finding that Claimant filed her fatal claim petition electronically on May 6, 2016, is supported by substantial evidence, and the Board did not err in affirming the WCJ in this regard.

## II. Statutory Presumption for Occupational Diseases

Employer argues, next, that the Board erred in holding that Claimant met her burden on the prerequisites to the presumption in Sections 108(r) and 301(f) of the Act that Claimant used to establish that Decedent's cancer was related to his firefighting duties. Employer concedes that Decedent had non-Hodgkin's lymphoma; that he was a firefighter for more than four years in continuous firefighting duties prior to his diagnosis; and that a physical examination did not reveal any evidence of cancer prior to his employment as a firefighter. However, Employer argues that Claimant did not establish that Decedent's cancer was caused by his direct exposure to an IARC Group 1 carcinogen that has been proven to cause non-Hodgkin's lymphoma. This type of cancer has not been studied enough to allow an expert to opine on cause; its cause is unknown, as Dr. Sandler testified. Further, Dr. Guidotti did not state how many exposures to a Group 1 carcinogen were needed in order to demonstrate that it was a substantial factor in the development of Decedent's cancer. The only documented carcinogen exposure came from a report

10

in Decedent's personnel file, *i.e.*, exposure to polychlorinated bi-phenyls (PCBs) in 1988. While Dr. Guidotti testified that dioxin was a cause of non-Hodgkin's lymphoma, he did not opine that exposure to dioxin can cause marginal zone lymphoma, the subtype of B-cell lymphoma he believed Decedent had.

Employer asserts that TCE, the other carcinogen discussed in Dr. Guidotti's testimony and report, was not designated as a Group 1 carcinogen by the IARC when Section 108(r) was added to the Act on July 7, 2011. For this reason, TCE cannot serve as the basis for benefits under Section 108(r) of the Act. This would violate the non-delegation doctrine, as established in *Protz v. Workers' Compensation Appeal Board (Derry Area School District)*, 161 A.3d 827 (Pa. 2017).

Although Decedent's last date of work as a firefighter was in October 2010, Employer argues there is no evidence that Decedent was exposed to Group 1 carcinogens in October 2010. The WCJ assumed the last date of Decedent's employment was also his last date of exposure to an occupational hazard. This assumption constitutes reversible error.

In response, Claimant argues that the WCJ's decision was fully consonant with the record evidence and the Act. Decedent fought fires for 25 years. Based upon his review of the epidemiological evidence, Dr. Guidotti testified that the risk of non-Hodgkin's lymphoma is substantially increased among firefighters and that it is caused by IARC Group 1 carcinogens including TCE and dioxin, which are present at fire scenes. The record supported the Board's finding that it is *possible* that Group 1 carcinogens caused the type of cancer with which Decedent had been afflicted, thereby entitling Claimant to the statutory presumption under Section 301(f) of the Act that Decedent's cancer was work related.

11

**A. Applicable Statutory and Case Law**

We start with a review of the relevant law. A claimant seeking benefits for a work-related injury bears the burden of establishing the elements necessary to support an award. *Coyne v. Workers' Compensation Appeal Board (Villanova University)*, 942 A.2d 939, 945 (Pa. Cmwlth. 2008). Section 301(c)(2) of the Act provides that the term "injury" includes an occupational disease, as defined in Section 108 of the Act. 77 P.S. §411(2). Section 108 of the Act provides a list of occupational diseases, one of which is "[*c*]*ancer suffered by a firefighter which is caused by exposure to a known carcinogen* [that] is recognized as a Group 1 carcinogen by [IARC]." Section 108(r) of the Act, 77 P.S. §27.1(r) (emphasis added). The Act establishes a presumption for firefighters asserting an occupational disease of cancer. Section 301(f) of the Act states, in pertinent part, as follows:

> Compensation pursuant to cancer suffered by a firefighter shall only be *to those firefighters who have served four or more years in continuous firefighting duties, who can establish direct exposure to a carcinogen referred to in section 108(r) relating to cancer by a firefighter and have successfully passed a physical examination prior to asserting a claim under this subsection or prior to engaging in firefighting duties and the examination failed to reveal any evidence of the condition of cancer. The presumption of this subsection may be rebutted by substantial competent evidence that shows that the firefighter's cancer was not caused by the occupation of firefighting*.

77 P.S. §414 (emphasis added).

In sum, to use the Section 301(f) presumption, the firefighter must establish four or more years of continuous firefighting duties; direct exposure to a Group 1 carcinogen; and a physical examination prior to engaging in firefighting that did not reveal cancer. The firefighter must also show that his cancer is a type

12

caused by exposure to a Group 1 carcinogen.[8] At that point, the burden of proof then shifts to the employer to offer evidence that "the firefighter's cancer was not caused by the occupation of firefighting." Section 301(f) of the Act, 77 P.S. §414.

Section 301(f) of the Act also imposes a time limitation on the filing of Section 108(r) claims. "First, a claimant must file the claim *within 300 weeks of the last date of work with exposure* to a known Group 1 carcinogen; if the claimant fails to do so, he is not foreclosed from bringing a claim by Section 301(f), but he loses the statutory presumption of Sections 301(e) and 301(f)." *Fargo v. Workers' Compensation Appeal Board (City of Philadelphia)*, 148 A.3d 514, 520 (Pa. Cmwlth. 2016) (emphasis added). Second, "if the claimant does not file the claim until more than 600 weeks after the date of *the last workplace exposure*, the claimant is foreclosed from bringing that claim in its entirety." *Id*. (emphasis added). The last date of exposure to a Group 1 carcinogen is critical in determining whether the claimant is eligible for the evidentiary presumption of entitlement to compensation in accordance with Section 301(f).

In *Sladek II*, 195 A.3d at 208, our Supreme Court held that Section 108(r) of the Act requires the claimant to establish only "a general causative link between the claimant's type of cancer and a Group 1 carcinogen." In other words,

---

[8] On the evidence of direct exposure, this Court has explained:

> Notably, Section 301(f) does not require career firefighters to identify and document the carcinogens encountered at every incident. Rather, a career firefighter may establish direct exposure to a Group 1 carcinogen by evidence of his occupational exposure to fire smoke, soot, diesel exhaust, and other hazardous substances such as asbestos, and expert medical/scientific evidence identifying the Group 1 carcinogens present in those substances.

*Bristol Borough v. Workers' Compensation Appeal Board (Burnett)*, 206 A.3d 585, 602 (Pa. Cmwlth. 2019).

the claimant must produce evidence that it is *possible* that the carcinogen in question caused the type of cancer with which the claimant is afflicted.[] It does not require the claimant to prove that the identified Group 1 carcinogen *actually* caused [the] claimant's cancer.

*Sladek II*, 195 A.3d at 208 (emphasis in original; footnote omitted). The Supreme Court instructed that "epidemiological evidence is clearly relevant and useful" at this first stage of litigation to the extent it "can provide insight into whether the agent can cause the disease." *Id*. (internal quotation omitted). To rebut the presumption that a firefighter's cancer was caused by his firefighting duties, the employer must identify the specific agent that caused the claimant's cancer and demonstrate that exposure to that agent did not occur in the course of firefighting duties. *Id.* at 209. The employer must "produce a medical opinion regarding the specific, non-firefighting related cause of [the] claimant's cancer." *Id*. Epidemiological evidence is not sufficient to rebut the presumption. *Id.* at 209-10.

## B. Analysis

With this statutory framework in mind, we first address Employer's challenge to the WCJ's finding on Decedent's last date of exposure to a Group 1 carcinogen, which date triggers the statute of limitations. In this regard, we view the evidence in the light most favorable to Claimant, the prevailing party. *Hoffmaster*, 721 A.2d at 1155.

The WCJ found that Decedent's last date of work was in October 2010 and that "during his employment" Decedent was exposed to Group 1 carcinogens. WCJ Decision at 10, Finding of Fact No. 16. The WCJ also found that Decedent was exposed to "all types of smoke, soot, and diesel fuel emissions" while employed as a career firefighter, and Group 1 carcinogens were present in this smoke and vehicle emissions. *Id.* These findings are supported by the credited testimony of

14

Claimant's fact witnesses and expert. Employer contends, however, that there is no evidence that Claimant fought fires in October of 2010 and that fact cannot be presumed. We rejected this argument in *City of Philadelphia v. Estate of Thomas Burke (Workers' Compensation Appeal Board)* (Pa. Cmwlth., No. 1215 C.D. 2020, filed July 30, 2021) (unreported),[9] slip op. at 15-16 (holding that career firefighter's last date of work is the last day of exposure to an occupational hazard). We will not revisit that decision and follow it here.

Next, Employer argues that Claimant did not establish that Decedent's cancer was caused by his direct exposure to an IARC Group 1 carcinogen. Section 108(r) does not require the claimant to prove that the identified carcinogen "*actually* caused [his] cancer." *Sladek II*, 195 A.3d at 208 (emphasis added). The general causation requirement "weeds out claims for compensation for cancers with no known link to Group 1 carcinogens." *Id*. The Supreme Court observed that the burden imposed by Section 108(r) "is not a heavy burden." *Id*.

Here, the WCJ credited the testimony of Claimant and Discher, and it showed that Decedent, a career firefighter since 1985, had been frequently exposed to fire smoke, soot, and diesel fuel emissions during his employment as a firefighter. Based upon his experience and review of the medical literature, Dr. Guidotti opined that the constituents of fire smoke, particularly TCE, are associated with an elevated risk of B-cell, non-Hodgkin's lymphoma. Dr. Guidotti identified dioxin, a Group 1 carcinogen present at fire scenes, as a primary promoter of non-Hodgkin's lymphoma. Dr. Guidotti testified within a reasonable degree of medical certainty

---

[9] This Court's unreported memorandum opinions, issued after January 15, 2008, may be cited "for [their] persuasive value, but not as a binding precedent." Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

15

that Claimant's cancer, a specific form of B-Cell, non-Hodgkin's lymphoma, arose out of his occupation as a firefighter. The WCJ credited his opinion.

Employer contends that the WCJ erred because Dr. Guidotti did not state how many times Decedent had to be exposed to any Group 1 carcinogen in order for that exposure to be a substantial factor in his type of cancer. The only documented carcinogen exposure was a report in Decedent's personnel file that suggested exposure to PCBs in 1988.

A "career firefighter may establish direct exposure to a Group 1 carcinogen by evidence of his occupational exposure to fire smoke, soot, diesel exhaust, and other hazardous substances . . . , and expert medical/scientific evidence identifying the Group 1 carcinogens present in those substances." *Bristol Borough*, 206 A.3d at 602. In *Sladek II*, the claimant, a career firefighter, testified about his exposure to fire smoke, soot, ash, and diesel emissions, and presented medical testimony as to the causal relationship between malignant melanoma and his exposure to these substances. This suffices to show "direct exposure." *See also Estate of Thomas Burke*, slip op. at 13 (evidence of deceased career firefighter's occupational exposure to fire smoke, soot, and diesel exhaust, combined with expert medical testimony, demonstrates exposure).

The testimony of Claimant and Discher established Decedent's exposure to fire smoke, soot, and diesel exhaust. Dr. Guidotti testified to the causal relationship between B-cell non-Hodgkin's lymphoma and Decedent's exposure to TCE and dioxin, which are found in fire scenes. In sum, substantial evidence supports the WCJ's finding that Claimant established Decedent's direct exposure to an IARC Group 1 carcinogen during his tenure as a firefighter.

16

Employer next argues that while Dr. Guidotti testified that dioxin is a Group 1 carcinogen related to non-Hodgkin's lymphoma, he did not testify that exposure to dioxin can cause marginal zone lymphoma, the subtype of B-cell lymphoma suffered by Decedent. Dr. Guidotti explained as follows:

> [Dioxin] is thought to be a primary carcinogen for non-Hodgkin's lymphoma but it *is also a very, very potent promoter. So if you have a carcinogen and then you also give dioxin you will get many more tumors than if you gave the primary carcinogen alone or dioxin alone and added them up.*
>
> So it has a promoting effect, and it fits into the category of what you were saying earlier about not exactly carcinogens but carcinogen promoters or co-carcinogens that amplify the effect of exposure to carcinogen, and dioxin is a classic example of that.

Guidotti Dep. at 135; R.R. 160 (emphasis added).

Taken as a whole, Dr. Guidotti explained that dioxin, a Group 1 carcinogen, amplified the effect of Decedent's exposure to other carcinogenic chemicals present in fire smoke, including TCE, that are associated with the formation of B-cell, non-Hodgkin's lymphoma. Dr. Guidotti also testified the subtypes of B-cell lymphomas, whether a marginal zone B-cell lymphoma or a diffuse large B-cell lymphoma, can "transform into one another" because they are "the same cell type[.]" Guidotti Dep. at 21; R.R. 46. While Dr. Guidotti and Dr. Sandler disagreed on the subtype of non-Hodgkin's lymphoma Decedent had, they "agreed that the distinction does not impact causation." Employer Brief at 19.

Section 108(r) of the Act requires a claimant to produce evidence that it is *possible* that the carcinogen in question caused the type of cancer from which he suffered, not that "the identified carcinogen *actually* caused [his] cancer." *Sladek II*, 195 A.3d at 208 (emphasis added). Dr. Guidotti's medical opinion on the causation of Claimant's B-cell, non-Hodgkin's lymphoma satisfies the general

17

causation requirement in Section 108(r) of the Act. Because the WCJ rejected the opinion of Dr. Sandler, Employer did not overcome the presumption that Decedent's cancer was related to his work as a firefighter. On appellate review, this Court does not reweigh evidence or review witness credibility. *Casne v. Workers' Compensation Appeal Board (Stat Couriers, Inc.)*, 962 A.2d 14, 17 (Pa. Cmwlth. 2008).

Finally, Employer argues that TCE cannot be the basis on which to award death benefits under Section 108(r) of the Act because it was not designated as a Group 1 carcinogen by the IARC when Section 108(r) was added to the Act on July 7, 2011. The WCJ award violates the non-delegation doctrine under *Protz*, 161 A.3d 827. This Court considered, and rejected, this argument in *City of Philadelphia v. Healey (Workers' Compensation Appeal Board)*, 297 A.3d 872, 882 (Pa. Cmwlth. 2023) (*en banc*), in which we explained:

> [U]nlike *Protz* and *Pennsylvania Builders Association v. Department of Labor & Industry*, 4 A.3d 215 (Pa. Cmwlth. 2010), wherein the General Assembly expressly authorized third parties to set standards that substantively affected [workers' compensation] recipients and builders without the necessary safeguards in place, in Section 108(r) of the Act, the General Assembly merely established the IARC's Group 1 listings as the evidentiary standard for claimants' statutory presumption that "weeds out" [workers' compensation] claims "for cancer[ ] with no known link to Group 1 carcinogens." *Sladek*, 195 A.3d at 208. A claimant does not automatically receive [workers' compensation] benefits merely because the IARC listed it as a Group 1 carcinogen. A claimant still has the burden to prove that he was exposed to such a substance and that the substance has been linked to his type of cancer. A WCJ must ultimately determine whether a claimant met his burden based on the evidence presented. Thus, regardless of whether ongoing research may change the IARC's Group 1 list, a claimant's evidentiary threshold remains the same.

18

We will not revisit that decision.

The findings of the WCJ are supported by substantial evidence, and they support the WCJ's conclusion that Claimant was entitled to the statutory presumption in Section 301(f) of the Act to prove that his non-Hodgkin's lymphoma was an occupational disease under Section 108(r) of the Act. We discern no error in the Board's adjudication to affirm the WCJ.

### III. Average Weekly Wage

In its final issue, Employer argues that the WCJ incorrectly calculated Decedent's average weekly wage. Employer argues that Decedent's wages should be calculated as of the date his disability arose in 2013, when he was diagnosed with cancer. At that time, Decedent was employed by Presbyterian Hospital. Employer argues that Decedent's 2013 wages, not those earned as a firefighter, should govern the calculation of compensation. Employer argues that *Fisk v. Workmen's Compensation Appeal Board (General Electric)*, 633 A.2d 1305 (Pa. Cmwlth. 1993), is distinguishable from the case at bar because the issue in *Fisk* was about "rate of compensation," which does not provide "precedential authority regarding the calculation of average weekly wage in an occupational disease case[.]" Employer Brief at 41 (emphasis in original omitted). Employer argues that the WCJ improperly placed Claimant's burden of establishing Decedent's wages upon Employer.

In *Fisk*, the decedent last worked for the employer that exposed him to asbestos on November 30, 1980. After he retired, he went to work for another employer. The decedent was diagnosed with asbestos-related lung disease in 1986 and died in 1987. The issue presented before this Court was whether the award

19

should be "based upon the decedent's wage at the time that he was last exposed to asbestos[.]" *Fisk*, 633 A.2d at 1306.

This Court held that a claimant in an occupational disease case is entitled to benefits calculated on the basis of his wages at the time of his last exposure to the occupational hazard. A Bureau regulation states: "For cases involving occupational diseases under the act, the weekly wage will be determined in accordance with [S]ection 309 of the [A]ct (77 P.S. §582), *and a claimant's compensation rate shall be subject to the maximum compensation payable rate in effect at the date of last exposure*." 34 Pa. Code §121.14 (emphasis added). This Court observed that setting the compensation rate as of the date a claimant's occupational disease manifested itself would be unjust to employees who are unemployed or retired. *Fisk*, 633 A.2d at 1307. They would have no earnings upon which to base an award. Therefore, we concluded that "for the purpose of calculating benefits in occupational disease cases under the Act, the date of injury must be the date of last exposure." *Id.*

In *City of Johnstown v. Workers' Compensation Appeal Board (Sevanick)* (Pa. Cmwlth., No. 1156 C.D. 2019, filed January 10, 2020) (unreported), this Court considered, and rejected, the argument that *Fisk* is limited in scope. We held that "*Fisk* leaves no uncertainty that the rate of compensation in an occupational disease case is fixed in the year during which the claimant is last exposed and that the [average weekly wage] is subject to the maximum rate in effect at the date of the claimant's last exposure." *Sevanick*, slip op. at 18-19.

Because Decedent's last date of exposure to the occupational hazard was October 2010, the WCJ directed the payment of benefits based on Decedent's wage as of October 2010. This did not improperly place Claimant's burden of

proving Decedent's loss of wages upon Employer. Employer has records of Decedent's employment, and Employer has not asserted that such information is unavailable. *See Estate of Thomas Burke*, slip op. at 17.

## Conclusion

We conclude that Claimant timely filed her fatal claim petition and met her evidentiary burden under Sections 108(r) and 301(f) of the Act and, thus, established that Decedent's cancer was related to his employment as a firefighter. The record supports the WCJ's finding that Decedent's last date of exposure to an occupational hazard was in October 2010, and the WCJ correctly held that Claimant's benefits should be calculated as of Decedent's last date of exposure. Thus, we affirm the Board's adjudication.

_____
MARY HANNAH LEAVITT, President Judge Emerita

Judge Dumas did not participate in the decision in this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia,           :
           Petitioner     :
                            :
          v.               :       No. 923 C.D. 2021
                            :
Larry Thompson (Workers'   :
Compensation Appeal Board),  :
           Respondent  :

## **O R D E R**

AND NOW, this 19th day of March, 2025, the adjudication of the Workers' Compensation Appeal Board, dated July 21, 2021, in the above-captioned matter, is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge Emerita